The State v. Smith.

# JANUARY TERM, 1888.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. WILLIAM A. JOHNSTON,

## The State of Kansas v. James Smith.

1. Bill of Exceptions, *When not Part of Record.* A bill of exceptions which is not presented, allowed, signed and filed until after the final adjournment of the term of the court at which the trial was had, cannot be regarded as a part of the record.

2. Bill of Exceptions; *Time to Prepare — Refusal.* It is generally the duty of the court, upon proper application, to continue the term a sufficient length of time to afford parties whose cases are tried near to the close of the term, a reasonable opportunity to prepare and present a bill of exceptions; but a refusal to do so cannot be corrected upon appeal.

3. Charge, *Part of Record, When.* The charge of the court in a criminal cause only becomes a part of the record by means of a bill of exceptions.

4. Information — *Intentional Murder Charged.* An information which, after alleging time and place, states that the defendant feloniously, willfully, deliberately, premeditatedly, and with malice aforethought, assaulted, struck, stabbed and cut H. with a knife, inflicting a mortal wound, from which H. died, and then concludes by charging that the defendant, in the manner and form aforesaid, did feloniously, willfully, deliberately, premeditatedly, and of malice aforethought, kill and murder H., sufficiently charges an intentional murder.

5. Jurat, *Irregular, Not Fatal.* The verification of an information and the jurat attached were in the following form:

"State of Kansas, Davis County, ss.: On this 12th day of March, 1887, personally came H. J. Humphrey, county attorney of said county, who being duly sworn according to law, deposes and says that the facts set forth in the foregoing information are true, to the best of his knowledge, information, and belief.—H. J. Humphrey.

"Sworn to and subscribed in my presence, the day and year last above written.—J. B. Callen, *Clerk of the Court.*"

*Held,* That the irregularity of the certifying officer in omitting

from the jurat the words "before me," after the words "sworn to," is not fatal to the information.

*Appeal from Davis District Court.*

AT the March Term, 1887, of the district court of Davis county, James Smith was prosecuted upon a charge of murder. The prosecution was based on the following information, caption and verification omitted:

"Now comes H. J. Humphrey, county attorney for the county of Davis, in the state of Kansas, and in the district court in and for said Davis county, at the March, 1887, term of said district court, in the name, by the authority, and on behalf of the state of Kansas, information gives that James Smith, on the 16th day of February, 1887, at the county of Davis and state of Kansas, then and there being, did then and there feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, make an assault on one Thomas Hill, and with a certain knife which he, the said James Smith, then and there had and held in his hand, did then and there feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, strike, stab, thrust and cut at, upon, and into the said Thomas Hill, inflicting on the said Thomas Hill, in the abdomen of the said Thomas Hill, one mortal wound, of which said mortal wound the said Thomas Hill thence continually languished until on the 17th day of February, 1887, at the county of Davis and state of Kansas, he died therefrom.

"And so said county attorney gives this court information that the said James Smith did, in manner and form aforesaid, feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, kill and murder the said Thomas Hill, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

A motion to quash the information was filed by the defendant, upon the grounds: First, that the facts stated in the information did not constitute a public offense; and second, that the information was not verified according to law. This motion was overruled, and upon a trial with a jury the defendant was convicted of murder in the second degree. Motions for a new trial and in arrest of judgment were filed and over-

ruled, and the defendant was sentenced to confinement at hard labor in the penitentiary for a term of sixteen years from the 21st day of March, 1887. The defendant appeals.

*J. R. McClure*, and *G. R. Chaney*, for appellant.

*H. J. Humphrey*, county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The questions principally discussed upon this appeal cannot be considered here, for the reason that no valid bill of exceptions is found in the record. A paper purporting to be one is attached to the transcript, but it is conceded not to have been allowed and signed within the time prescribed by law. The case was tried and the verdict rendered at the March term, 1887, and motions for a new trial and in arrest of judgment were overruled and sentence pronounced on the 6th day of April, 1887. On April 7, 1887, the court adjourned *sine die*. It is conceded that the bill of exceptions was not prepared and presented to the judge for allowance and signing until the 23d day of May, 1887, forty-five days beyond the closing of the term at which the trial was had. The statute directs that exceptions to the ruling of the court must be reduced to writing, and allowed, signed and filed during the term when the decision is made. If the decision objected to is made by a judge at chambers, the exceptions must be prepared and allowed within ten days afterward. In either case, to be valid, a bill of exceptions must be signed and filed within the time prescribed by law; and as the exceptions in the present case were signed and filed far beyond the term, they form no part of the record, and we are not at liberty to consider them. (Crim. Code, § 219; Civil Code, § 300; *Brown v. Rhodes*, 1 Kas. 359; *Gallaher v. Southwood*, 1 id. 143; *Lownsberry v. Rakestraw*, 14 id. 151; *The State v. Bohan*, 19 id. 28; *The State v. Burrows*, 33 id. 10.) On the motion to strike out, an affidavit was filed stating that as the trial was had at the close of the term, it was impracticable to obtain from the official stenogra-

1. Bill of exceptions, when not part of record.

pher a transcript of the testimony and proceedings in the case
before final adjournment.   The trial closed on April 6, the
court adjourned on the next day, and as the testimony was
voluminous, it was impossible to make a transcript in so short
a time.   A party is entitled to and should be afforded a rea-
sonable time to prepare and present his exceptions,
and this can ordinarily be done by extending the
term; or, when the other business is disposed of,
adjourning to some future day for the allowance and signing
of exceptions.   This is a proper, and is believed to be the pre-
vailing, practice.   In the showing here made there is a state-
ment that the judge of the district court of Davis county
declined to continue the March term to a future day prior to
to the next regular term of that court.   It is not stated, how-
ever, that the application was made on the ground that there
was not sufficient time to prepare a bill of exceptions, nor does
it appear that the judge was informed that counsel for defend-
ant desired so to do.   If a proper application and showing had
been made, it would appear to have been the duty of the judge
to continue the term over a sufficient length of time for the
preparation of a bill of exceptions; and probably if this had
been done, the application would have been granted.   If he
unreasonably refused to do so, he might by a proper proceed-
ing have been compelled to grant sufficient time to reduce the
exceptions to writing, and also to allow and sign the same
before the final adjournment of the court.   No such showing
has been made here, and even if it had been, the remedy can-
not be obtained on this appeal.   It follows that we cannot
consider the rulings upon the testimony.

The next question for decision is, whether the charge of the
court is properly in the transcript.   There is a certificate of
the clerk that the transcript embraces a true copy of the
charge; but can the instructions given be brought into the
record unless they are embodied in a bill of exceptions?   It
has already been decided that instructions asked for and re-
fused do not become a part of the record except by means of
a bill of exceptions.   (*The State v. McClintock*, 37 Kas. 40;

2. Bill of excep-
tions; time to
prepare—re-
fusal.

same case, 14 Pac. Rep. 511.) The question whether the instructions given can be preserved except by a bill of exceptions has been raised in several cases, but not being necessary to their disposition, it was not decided. We are of opinion that only through a bill of exceptions can the charge given be brought into the record. It is true that the instructions of the court in a civil cause do become a part of the record without being preserved in a formal bill of exceptions. There is a marked distinction, however, in the provisions of the statute regarding the instructions in a criminal case and those given in civil cases. In criminal cases it is provided that "the judge must charge the jury, in writing, and the charge shall be filed among the papers of the cause." (Crim. Code, §236.) In civil cases it is provided that a formal bill of exceptions is not required, and that it is sufficient to write at the close of each instruction, "Refused and excepted to," or "Given and excepted to," which shall be signed by the judge; and further, that "all instructions given by the court must be signed by the judge, and filed together with those asked for by the parties, *as a part of the record.*" (Civil Code, §§ 275, 276.) These provisions were considered and reënacted by the same legislature, and the great difference in the language used respecting the instructions in the two classes of cases, is significant. In the one case it is provided in plain terms that when the instructions are signed and filed, they become a part of the record, while in the other it simply declares that the charge shall be filed with the other papers of the cause. Affidavits on motions and depositions are likewise filed among the papers of the case, but they do not thereby become a part of the record. Formerly, the charge to the jury was not given in writing, and constituted no part of the record; nor is it a part of the record now unless made so by statutory enactment. The explicit provision by the legislature, that the instructions in a civil cause shall be filed "as a part of the record," leaves no doubt of the legislative purpose with respect to such instructions; but the absence of the same or similar language in the pro-

3. Charge, part of record, when.

vision relating to the instructions in a criminal cause indicates quite clearly an intention that they should not become a part of the record by merely filing them among the papers of the cause. In the Ohio code there is a provision that the written charges and instructions shall be taken by the jurors when they retire, and returned with their verdict into court, *and shall remain on file with the papers of the case;* and the supreme court of that state has held that the charge so returned and filed, and which is not embodied in a bill of exceptions, cannot be regarded as a part of the record. ( *Hallam v. Jacks,* 11 Ohio St. 692; *Lockhart v. Brown,* 31 id. 431; *Pettett v. Van Fleet,* 31 id. 536.)

It only remains to consider the questions raised against the sufficiency of the information. The defendant claims that it does not charge an intention on his part to kill and murder the deceased. In the first part of the information it is alleged that defendant feloniously, willfully, deliberately, premeditatedly, and with malice aforethought, assaulted, struck, stabbed and cut Thomas Hill with a knife, inflicting a mortal wound, from which Hill died; and then it concludes by charging that the defendant, in the manner and form aforesaid, did feloniously, willfully, deliberately, premeditatedly, and of malice aforethought, kill and murder Thomas Hill. The language of the information taken together plainly imports that the defendant cut and stabbed Hill with the intention of murdering him; and it is clear that neither the defendant nor his counsel could have mistaken the nature and grade of the offense charged. Within the former decisions of this court, the information was unquestionably sufficient to charge an intentional murder. ( *The State v. Smith,* 1 Kas. 365; *The State v. Brown,* 21 id. 38; *The State v. Harp,* 31 id. 496.)

4. Information — intentional murder charged.

A final objection is made to the jurat attached to the information. The verification was by the oath of the county attorney, in the presence of the clerk of the district court, and is in the following form:

"STATE OF KANSAS, DAVIS COUNTY, ss.: On this, 12th day

of March, 1887, personally came H. J. Humphrey, county at torney of said county, who, being duly sworn according to law, deposes and says that the facts set forth in the foregoing information are true, to the best of his knowledge, information, and belief.                    H. J. HUMPHREY.

"Sworn to and subscribed in my presence, the day and year last above written.  .  J. B. CALLEN, *Clerk of the Court.*"

It will be observed that the jurat did not follow the stereotyped form of, "sworn to before me and subscribed in my presence," as the words "before me" were omitted. The clerk does state that the county attorney took the oath in his presence; and as he certifies that H. J. Humphrey personally came and was duly sworn according to law, there is a fair implication that Humphrey not only came, but also swore to the information before the subscribing officer. There is nothing in the jurat to raise a presumption that any other officer or person administered the oath. The usual form of jurat does not in terms state that the oath is administered by the officer, but only that it is sworn to before him. Here it is certified that the oath was duly and legally taken in the presence of the officer, which does not differ greatly from a statement that it was taken before him. The certifying officer is one authorized to administer oaths, and he signs and certifies in this case as if he administered the oath; otherwise, it would not have been duly and legally done. While the certificate is somewhat irregular, the objection is quite technical; and under § 110 of the criminal code it is provided that an information shall not be set aside "for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The judgment of the district court must be affirmed.

All the Justices concurring.