## THE STATE OF KANSAS V. ADOLPH GLUCK.

1. INFORMATION — *Joinder of Offenses.* In a prosecution against a mayor of a city of the second class for a violation of ¶ 2532, General Statutes of 1889, the offender may be charged with several offenses, combined in one information, and proof of either of the acts mentioned in the statute and set forth in the information will sustain a conviction. The case of *The State v. Schweiter,* 27 Kas. 499, cited and followed.

2. ———— *Name of County Attorney.* In such a prosecution it is not necessary to give the name and date of qualification of the county attorney.

*Appeal from Ford District Court.*

THE facts are sufficiently stated in the opinion.

*David Overmyer,* for appellant:

To make the information good, it must allege: 1st, that there was a violation or violations of law, stating with reasonable certainty facts necessary to establish such violations; 2d, that the accused had notice or knowledge of the fact constituting such violation; 3d, that he failed to notify the county attorney of the fact of such violation, or to furnish him the names of any witnesses, etc.

If there was no county attorney, there could be no such offense. It is absolutely necessary, therefore, that the information should allege that at the time of the alleged offense some particular person was either *de jure* or *de facto* county attorney — in short, that there was a county attorney, naming him. Unless the information contains such an allegation, it charges no offense, for the fact that there was a county attorney is a material fact; indeed, it is the one great, essential fact which makes matters otherwise unimportant constitute a crime. It is not sufficient to allege simply that he failed to notify the county attorney; such an allegation is not the equivalent of an allegation that some person, naming him, was county attorney.

In a prosecution for obstructing legal process, "it must be

charged that he was an officer, and acting in that capacity."
*McQuoid v. The People,* 3 Gilm. 20. See, also, 2 Whar.
Prec. Ind., No. 879; Starkie, Cr. Pl. 178, 179, 187, 188;
*Gordon's Case,* Leach, 581; 4 T. R. 366; 5 id. 607; 3 id.
632; Whar. Am. Cr. L. (3d ed.), p. 554, and cases cited; id.
(9th ed.), § 652. From these authors, and from the plainest
principles of law, it is clear that, in a case like the case at
bar, the information must allege not only that some particular
person was county attorney, but that he was acting as such
within the county at the time of the alleged offense of failing
to notify him, etc.

The information is bad for duplicity. It attempted to
charge two distinct offenses in a single count. It charged
that the defendant knew of facts alleged to be criminal, and
failed to inform the county attorney. It also charged that he
knew of the names of persons by whom said alleged viola-
tions of law could be proven, and that he failed to furnish
the county attorney with the names of persons by whom said
violations could be proven. Either act, if established upon
proper information, would constitute an offense; therefore,
the information in a single count attempted to charge two of-
fenses. The defendant was found guilty by a general verdict,
as follows: "We, the jury, impaneled and sworn in the
above-entitled cause, do, upon our oaths, find the defendant
guilty as charged in the information.—J. B. ELLIS, Fore-
man." Now what do they find the defendant guilty of? Do
they find him guilty simply of failing to report what he knew,
or do they find him guilty of failing to furnish the names of
witnesses who could prove the alleged violation? Which of
these charges is barred by the conviction?

The defendant moved to quash the information, not only
for the general reason that it did not state sufficient facts to
constitute an offense, but for the further reason that said in-
formation contains two offenses in one count. Upon this in-
formation, which conveys to the party no idea of any fact,
knowledge or notice of which will be imputed to him in evi-
dence, which is so vague that the accused cannot prepare for

his defense against it, he is not only put to trial and condemned personally, but the municipality of which he is an officer is deprived of the officer of its choice. It cannot be that men can be convicted, sentenced, and punished, and municipalities disfranchised, upon an information alleging not one single fact which is a constituent of any offense against the law. Again, I say the motion to quash and in arrest of judgment should have been sustained. Nor can the state complain if this is done. The state had ample notice that the defendant claimed that the information was uncertain. The defendant moved for specifications as to the character of the notice and as to the names of witnesses, etc. It may be that such a motion is unknown to our criminal procedure. It has sometimes been employed in the federal courts. See *United States v. Bennett,* 16 Blatch. 333. But it was at all events fair to the state, and gave the state to understand particularly the nature of defendant's objection to the information, and gave the county attorney an opportunity to file an amended or other information.

What business the judge had to linger around the jury-room for the space of 10 minutes, talking to jurors, is not explained. It is a fact, however, that before he went to the jury-room the jury were about to disagree, indeed, had disagreed, and reported to him that they could not agree, and that after he visited them they did agree, and that their verdict was "guilty." In going to the jury-room and talking with them there, either separately or collectively, the judge was guilty of gross misconduct, even if he meant no wrong. If he wanted to find out anything about the state of their deliberations, as to whether they had agreed or were liable to agree upon a verdict, it was his duty to call them into court, and do the thing decently, openly, regularly, and in order.

*John N. Ives,* attorney general, and *Ed. H. Madison,* county attorney, for The State:

In actions of this kind, it is unnecessary to allege that a particular person was acting as county attorney for any period

of time prior to the filing of the information. . It makes no difference what citizen of the county was county attorney — whether it was John Smith or William Jones. It is sufficient to allege that the defendant failed to notify the county attorney of the county in which the crime was committed. The office of county attorney is established by law. Provisions are made for the election and qualification of persons to that office, and ample provision is made, as indicated by defendant's brief, for the continuous occupation of that office by some citizen of the county. The presumption is that some person is acting in that capacity in each county.

The law provides that the county attorney shall keep and maintain an office in the court-house in the county seat, and shall keep it open six days in the week for the transaction of public business; Gen. Stat. of 1889, ¶ 1877; and it is not necessary for the pleader in an action of this kind to plead that a certain person is and was county attorney, and the only county attorney, that no one is contesting his office, and that he has complied with the law, and kept and maintained a public office, and that he has not been absent for a long period of time attending a session of the federal court. In the case at bar no wrong is done the county attorney. He is a passive individual in the transaction. The notice is to the office. The allegation that he wholly and entirely failed and neglected to notify the county attorney of Ford county, is equivalent to saying that he notified no one filling that position.

Objection is made to the information for duplicity. The statute under which this prosecution was had, General Statutes of 1889, ¶ 2532, provides as follows:

"It shall be the duty of all . . . mayors . . . of any city or town, having notice or knowledge of any violation of the provisions of this act, to notify the county attorney of the fact of such violation, and to furnish him the names of any witnesses within his knowledge by whom such violation can be proven."

The defendant is prosecuted for a violation of official duty.

It is alleged that he knew that certain parties were maintaining a common nuisance in violation of the prohibitory act, and knew the names of persons who would testify to the fact. It was his duty to report all this to the county attorney. By his failure to report he committed a crime. It was the duty of the pleader to set out all the facts constituting his failure to perform his duty with regard to this violation of law. It is the duty of the officer to "notify and furnish" at one and the same time. By failing to "notify and furnish," he fails to comply with the provisions of this act.

It is not attempted to allege that defendant knew that John Doe was also violating the law, and Gluck had failed and refused to notify the officer of Doe's violation. If it had so been alleged, then the information would have been bad for duplicity. It would not have been just to the defendant to have divided his failure to comply with the provisions of this paragraph into two separate and distinct offenses, and put him upon trial as to each. If we had done so, he would have insisted that, as he was charged with being cognizant of but one crime, and that, as it was his duty at one and the same time to "notify and furnish," he should not be charged with two offenses. The trial court considered that but one offense had been committed, and instructed the jury in such manner that no prejudice occurred to the defendant.

Exception is taken to use of the language, "actual notice *and* knowledge." Bouvier and counsel for appellant seem to disagree slightly. 2 Bouvier's Law Dict., p. 236. The information, in alleging that Gluck had actual notice and knowledge of the unlawful acts of Heinz and Wright, simply alleges that he *knew* of those acts; that knowledge had actually been brought home to defendant. It entirely precluded the idea of constructive notice.

This court is asked to reverse the judgment of the lower court and send the case back to Ford county for a new trial, because the trial judge, on being compelled to leave the city, went into the jury-room — the first time at the request of the jury, who desired to inform him that they could not agree

upon a verdict, and the second time for the purpose, and for that purpose alone, of informing the jury that he must leave the city, and telling them what arrangements had been made about keeping them together. The state has shown, and shown conclusively, that no harm or prejudice occurred to the defendant. Everything said and done during the judge's visits is before the court; there are no grounds for presumptions. We submit that there was nothing done or said that would warrant a reversal.

Opinion by SIMPSON, C.: This was a prosecution under § 9 of the act of March 8, 1887, chapter 165, now ¶ 2532, General Statutes of 1889. The appellant was charged with having violated this section of the statutes, as mayor of Dodge City, in Ford county. He was convicted, and fined $100, and his office of mayor declared forfeited. Said section provides that —

"It shall be the duty of all sheriffs, deputy sheriffs, constables, mayors, marshals, police judges and police officers of any city or town, having notice or knowledge of any violation of the provisions of this act, to notify the county attorney of the fact of such violation, and to furnish him the names of any witnesses within his knowledge by whom such violation can be proven. If any such officer shall fail to comply with the provisions of this section, he shall, upon conviction, be fined in any sum not less than $100 nor more than $500; and such conviction shall be a forfeiture of the office held by such person, and the court before whom such conviction is had shall, in addition to the imposition of the fine aforesaid, order and adjudge the forfeiture of his said· office. For a failure or neglect of official duty in the enforcement of this act, any of the city or county officers herein referred to may be removed by civil action."

The information charged that —

"On the 7th day of April, 1891, in said county of Ford and state of Kansas, one Adolph Gluck was duly elected mayor of the city of Dodge City, Kas., and thereafter said Adolph Gluck duly qualified as required by law and entered upon the discharge of the duties of mayor of said city — said city of Dodge City then and there being a city of the second class,

duly organized and incorporated under the laws of Kansas; that on the 20th day of June, 1891, the said Adolph Gluck was, and ever since has been, the duly-acting and qualified mayor of Dodge City, Kas.; that on or about the 27th day of June, 1891, in the county of Ford and state of Kansas, said Adolph Gluck became possessed of actual notice and knowledge that one Chas. Heinz and one Chas. Wright were then and there keeping and maintaining and operating certain rooms on the second floor of the brick building located on the east 19 feet of lot 34 and the east 6 feet of lot 32, Front street, Dodge City, Ford county, Kansas, (the property of said Adolph Gluck,) as a place where intoxicating liquor was sold, bartered and given away contrary to law, and as a place where persons were permitted to resort for the purpose of drinking intoxicating liquors as a beverage, and as a place where intoxicating liquors were kept for sale, barter and delivery in violation of law; that said A. Gluck then and there and afterwards became possessed of actual knowledge of the persons by whom said described violation of law could be proven; that said Adolph Gluck continued to receive, and now has, actual notice and knowledge of said violation of law; that said Adolph Gluck has, in said county and state, unlawfully, wholly and entirely failed and neglected to notify the county attorney of Ford county of said described violation of law, or to furnish said county attorney with the names of persons by whom said violation could be proven."

The contention of the plaintiff in error is, that the information is not good, because, first, it does not charge that there was a violation of law, stating with reasonable certainty the facts necessary to show a violation; second, it does not show that the accused had notice or knowledge of the facts constituting such violation; third, it does not show who was county attorney at the time these alleged violations occurred. None of these contentions are controlling. It was not necessary to allege the particular person who was acting as county attorney. It is not analogous to an action for obstructing legal process, or resisting an officer. In such a case the official capacity of the officer and the identity of his person must be alleged and proven; here it does not make any difference who was county attorney, or whether he was a *de jure* or *de facto* officer. "County attorney" is the designation of

an office, and it is immaterial what person was discharging the duties of that office. Neither is the information bad for duplicity, conceding that more than one offense is set forth in the information. We think the case of *The State v. Schweiter*, 27 Kas. 499, is conclusive. In a word, all that is required in an information under this section of the statute is, to aver the official capacity of the defendant; the fact that he has knowledge or notice of the violation of the law, and that he failed to notify the county attorney of such violation. As to the defendant, the offense must be fully pleaded, but it is not necessary to technically plead the violations of the law that come to the knowledge or notice of the accused. We find no error in the action of the trial court overruling the various motions directed against the information.

We cannot consider the various assignments of error with respect to the instructions, because they are not embodied in the bill of exceptions. It is true that there is a reference to them in the bill of excepttions, but it recites the "foregoing," and does not name the instructions as an exhibit, they being almost the last thing in the record, and coming long after, not only the formal part of the bill of exceptions, but the bill itself, as signed by the trial judge. (*The State v. Smith*, 38 Kas. 194.)

During the time the jury was deliberating, the trial judge twice visited the jury-room and held conversations with the jury, neither the defendant or his counsel being present. This conduct of the trial court is made a cause for a new trial. There is no dispute about the facts of these visits, but the evidence of the jurors, as well as that of the trial judge, shows that the conversations had with the jury were to the effect that they must act according to the evidence, and take the law as given them by the instructions. We impute nothing wrong to the trial judge in this particular instance, and it is plain that he said nothing tending to prejudice the jury against the defendant; and yet such visits ought not to be permitted under any circumstances; but while the court criticises the practice, and in a proper case would hold it, if accompanied by any

evidence tending to show a prejudicial effect, a sufficient cause for reversal, there is nothing to show in this record that any such result was either anticipated or attempted in this particular case.

We recommend that the judgment of conviction be affirmed.

By the Court: It is so ordered.

All the Justices concurring.