THE STATE OF KANSAS v. ROBERT BORCHERT.

No. 13,702. (74 Pac. 1108.)

SYLLABUS BY THE COURT.

1. STATUTORY RAPE—*Evidence of Similar Acts Admissible.* In a prosecution upon a charge of statutory rape, where it is claimed that the act relied on for conviction was a part of a course of illicit sexual commerce between the defendant and the complaining witness, it is not error to admit evidence of other acts similar to that so relied on, for the purpose of showing the relations existing between the parties.

2. PRACTICE, DISTRICT COURT—*Written Communication between Judge and Jury.* The fact that written communication relating to the form of the verdict took place between the judge and the jury after the submission of the cause will not require a new trial where it can be said that no prejudice could have resulted to the defendant.

Appeal from Reno district court; M. P. SIMPSON, judge. Opinion filed January 9, 1904. Affirmed.

*C. C. Coleman,* attorney-general, *J. U. Brown,* and *Carr W. Taylor,* of counsel, for The State.

*Hettinger & Hettinger,* for appellant.

The opinion of the court was delivered by

MASON, J: Robert Borchert appeals from a conviction upon a charge of rape alleged to have been committed by his carnally and unlawfully knowing his daughter, she being under eighteen years of age. Various assignments of error are made, only two of which require discussion, one relating to the admission of testimony and the other to communication between judge and jury after the submission of the case.

The state was permitted, over defendant's objection, to give evidence of a number of acts of illicit intercourse other than that upon which reliance was had

for conviction, each of such acts constituting a violation of the statute under which the charge was made. This the appellant contends to be error, under the authority of *The State v. Stevens,* 56 Kan. 720, 44 Pac. 992. The doctrine of that case is that it is not competent in a prosecution for one offense to show that the defendant is guilty of another similar offense merely for the purpose of enabling the jury to infer that as he had committed one crime he would be likely to commit another. It may be that in the course of the opinion too narrow statements are made of the grounds upon which testimony as to other offenses may be admitted. But these expressions must be interpreted in the light of the circumstances giving rise to them. The true rule is that testimony which is otherwise admissible as tending to prove the defendant guilty of the very crime charged is not rendered inadmissible by the fact that it also tends to show that he has committed some other crime.

The real inquiry here is whether the evidence objected to did fairly tend to show that the defendant was guilty of the one criminal act for which he was prosecuted. The state offered it as supporting the charge by showing the previous relations between the defendant and the prosecuting witness. It is well settled that in prosecutions for a single act forming a part of a course of illicit commerce between the sexes it is permissible to show prior acts of the same character. (1 Cent. Dig., col. 2013, § 30; 27 id. col. 44, § 11.) Such cases are sometimes, as in *The State v. Markins et al.,* 95 Ind. 464, 48 Am. Rep. 733, said to form an exception to the general rule that one crime cannot be proved in order to establish another independent crime. In fact, however, they fall within the rule already stated. Such evidence is admitted

not because it proves other offenses, but in spite of that fact. Its justification is that it is corroborative of the direct evidence of the offense charged. This is illustrated by a peculiarity of the decisions in Massachusetts. There it was formerly held that in prosecutions for adultery the actual commission of the same offense could not be shown, although any prior familiarities between the same parties short of that might be. This ruling is thus commented upon by Mr. Bishop: "According to which doctrine, if the evidence is a little weak, yet tending remotely to establish the crime, it may be submitted to the jury; but, if it is a little stronger and tends more clearly to the same result, it must be excluded." The Massachusetts court has since rid itself of this anomalous doctrine and conformed to the generally accepted rule. (Bish. Stat. Cr. § 680, and cases cited.)

While the reasons for admitting the evidence of former acts of illicit intercourse may be stronger in prosecutions for offenses involving the actual consent of both parties, they have some application in such a case as the present, where force is no essential element of the offense. They have frequently been held to apply in incest prosecutions where the facts differed in no important particular from those shown by the evidence in this case. In *Taylor v. The State*, 22 Tex. App. 529, 3 S. W. 753, 58 Am. Rep. 656, they were given effect in a case of statutory rape, although they were there inaccurately summarized as having relation to defendant's "motive." We but follow the general rule in deciding that the trial court committed no error in this regard.

While the jury were deliberating upon their verdict, and while their balloting showed a disagreement on

the question of the defendant's guilt, they sent to the judge a written communication, as follows :

"*To Hon. Judge Simpson:*

"Some of the jury ask this question : Would a verdict of guilty, accompanied with a recommendation for mercy, be received by the court?

W. C. PUTT, *Foreman.*"

The judge, without calling in the jury, or notifying the parties, wrote upon the paper, "Yes.—M. P. SIMPSON, *Judge,*" and returned it to them. Thereafter several ballots were taken, the number of those voting for acquittal being gradually reduced, until finally a verdict was agreed upon and returned, finding the defendant guilty and including a recommendation for mercy. It is argued that the fact that the judge held communication with the jury relative to their verdict otherwise than in open court is of itself ground for reversal, and that the answer given to the jury was an inducement to them to find the defendant guilty. It is undoubtedly better that no communication whatever relative to the case should pass between the judge and the jury otherwise than in open court and in the presence of the defendant. It has been held that any violation of this rule, however harmless in fact, requires a new trial. (*Lester v. Hays*, 14 Tex. Cr. App. 643, 38 S. W. 52, and cases cited.) In *Sargent v. Roberts*, 1 Pick. 337, 11 Am. Dec. 185, it was said of a written communication between the judge and jury :

"As it is impossible, we think, to complain of the substance of the communication, the only question is, whether any communication at all is proper, and if it was not, the party against whom the verdict was is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the

judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course : 'He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed ;' and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned, the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person ; and any direction to them from him, either verbal or in writing, is improper. It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it ; the only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case, except in open court in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object.''

In *Chris Hoberg v. State of Minnesota*, 3 Minn. 262–269, Gil. 181, it was said of an oral communication :

''Another objection exists in the fact that after the jury had retired to consider upon their verdict, the judge visited and had communication with them without consent of, and apart from the prisoner and his counsel. This is clearly irregular, whatsoever the motive, and howsoever harmless the communication. The character of the honorable district judge is a sufficient guaranty that, in the present case, the motive that prompted the visit was not improper, and we have no doubt that the communication was limited, as stated in the case, to merely informing the jury that if they desired any information on matters of law, they should come into court and ask for it. Still, a judge has no more right to communicate with

a jury after it has retired, than any other person, and we must look upon his visit in this case in the same light that we would view the entry of any third person into the jury-room, while the jury was in consultation.   The judge can have no communication with the jury, or give them any or the least information, except in open court in the presence of, or after due notice to the district attorney and the prisoner or his counsel.   We cannot guard too strictly so dangerous a practice as is here complained of.''

That the rule so announced is a wholesome one cannot be doubted, yet to require a new trial as a consequence of its every infraction, might be to enforce it too rigorously.   It is probably more in keeping with substantial justice and with the spirit of our laws to hold that a new trial need not be granted where the prevailing party is chargeable with no wrong, and where it affirmatively appears that no injury resulted, or could result, to the loser.

In *The State v. Gluck*, 49 Kan. 533, 31 Pac. 690, a new trial was refused, although the record showed that during the time the jury were deliberating, neither the defendant nor his counsel being present, the trial judge twice visited the jury-room and held conversations with the jury, to the effect that they must act according to the evidence, and take the law as given them by the instructions.   It is at least doubtful, however, if that case should be accepted as a precedent.

We do not find in the facts of this case anything to indicate that the defendant could have suffered any prejudice from what took place.   If the jury had in the first instance inserted in their verdict the recommendation for mercy, it is not contended that there would have been error in receiving it, although the court might properly have rejected it.   .(*The State v.*..

*Potter*, 15 Kan. 302.) The jury merely inquired in advance whether a verdict with the extraneous matter would be received, and the judge, having authority to accept it or refuse it, chose to accept it, and notified the jury that he would do so. The communication related only to the form of the verdict, not to any question as to the guilt or innocence of the defendant. (*Tilley v. Montelius Piano Co.*, 15 Colo. App. 204, 61 Pac. 483; *McCutchen v. Loggins*, 109 Ala. 457, 19 South. 810.) There is nothing in the record to justify the contention that the effect of the judge's conduct was to hold out to the jury as an inducement to a verdict of guilty an implied promise that leniency would be shown in fixing the punishment.

We hold that the irregularity stated does not require a reversal of the present case.

The judgment is affirmed.

All the Justices concurring.