NOT DESIGNATED FOR PUBLICATION

No. 120,505

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JUAN QUINONES-AVILA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed July 5, 2019. Affirmed.

*Njeri Mwangi*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Timothy Olson*, of LeBaron-Ramos Law Firm LLC, of Kansas City, for appellee.

Before GARDNER, P.J., GREEN and ATCHESON, JJ.

GARDNER, J:  This is an interlocutory appeal by the State from the district court's pretrial exclusion of evidence in a rape case.

*Factual and Procedural Background*

On January 3, 2018, two law enforcement officers responded to a domestic disturbance call and spoke with Y.Q., who reported that her husband, Juan Manual Quinones-Avila had raped her that afternoon. Y.Q. went to The University of Kansas

Medical Center where she spoke with two detectives before undergoing a sexual assault examination. Y.Q. reported having consensual sex with another partner the day before. She said that she was lying on the bed when Quinones pulled her clothes off and forcefully had sex with her without her consent. The sexual assault examination showed redness and evidence of sexual activity as well as bruising on her left hip. She was willing to speak with detectives at the hospital and gave a taped statement.

Meanwhile, the police took Quinones into custody. After being given his *Miranda* rights, Quinones gave police his version of events. He stated that he and Y.Q. had consensual intercourse that afternoon and that they were a playful couple who tend to hit each other playfully and wrestle. He said that he left after intercourse to get McDonald's and when he returned, Y.Q. was mad at him and he did not know why. Quinones was then charged with one count of rape, a severity level 1 person felony, in violation of K.S.A. 2018 Supp. 21-5503(a)(1)(A).

At the preliminary hearing in April 2018 the State called Y.Q. as a witness. She testified that she and Quinones married in 2011 and have three children together, ages six, five, and three. The couple started encountering relationship problems shortly after they got married. At the time of this incident, the family lived with Y.Q.'s mother in Kansas City, Kansas. Y.Q. testified that on January 3, 2018, she was sleeping in bed when Quinones woke her up by forcing her to have intercourse. Y.Q. said that Quinones got upset when she tried to tell him to stop and he accused her of cheating on him. Quinones completed the alleged rape of Y.Q. The altercation continued when Y.Q.'s phone alerted and Quinones got mad. Y.Q. testified that they yelled at each other and that Quinones "pulled [her] on the bed and spanked [her] three times really hard."

Y.Q. called her brother once Y.Q. left to run an errand. Her brother called their father, who came to the apartment and called the police. Y.Q. testified that she is afraid of Quinones and was afraid to call the police. She said that Quinones is abusive toward her

2

and that years ago when she tried to call the police, Quinones threw her phone against the wall. She also said that this was not the first time Quinones sexually assaulted her, as the conception of their three-year-old daughter resulted from rape. At the end of Y.Q.'s testimony, the district court evaluated the evidence in a light most favorable to the State and found probable cause to bind Quinones over for trial. Quinones entered a plea of not guilty.

As the case proceeded, Quinones-Avila moved to admit evidence that Y.Q. had an affair to discredit her credibility and to show motive to fabricate the alleged rape. He also sought to present evidence of the couple's sexual history within their marriage, and sought to cross-examine Y.Q. about the timing of her divorce filing. The State moved to exclude evidence of Y.Q.'s sexual history, arguing that evidence of an extramarital affair was not relevant, was protected by the rape shield statute, and bore no relationship to whether Quinones raped her on January 3. It also argued that evidence of Y.Q.'s divorce filing and of the couple's sexual history was irrelevant and thus inadmissible.

The district court held a hearing on the motions. It ruled that evidence of Y.Q.'s affair was inadmissible, noting that sexual immorality has nothing to do with honesty or veracity of a witness and finding that its prejudicial effect would outweigh its probative value. It then ruled that evidence of the sexual history between Quinones and Y.Q was admissible, finding that it was relevant and that it was more probative than prejudicial. The district court noted that with this evidence, Quinones can present evidence of the couple's prior sexual history and habits and their ways of showing consent because that was part of Quinones' viable defense, and that the State would have plenty of opportunity for cross-examination. Finally, the district court ruled that evidence of Y.Q.'s subsequent divorce filing was admissible but that the divorce petition itself was more prejudicial than probative and therefore inadmissible. Those rulings are not challenged on appeal.

In October 2018, the State moved to determine the admissibility of other crimes into evidence—namely, that the couple's youngest child had been conceived by rape and that Quinones had digitally penetrated Y.Q. without her consent while she was sleeping a few days before the alleged rape. Quinones filed two motions—one objecting to the State's motion to admit evidence of other crimes and another to admit evidence beyond rape shield relating to Y.Q.'s sexual activity with another partner.

The district held that Quinones could introduce evidence of Y.Q. having sexual intercourse with another person within 24 hours of the alleged rape only as an alternative explanation for the physical signs of intercourse observed on Y.Q.'s vaginal area and pain she reported during the physical examination.

Next, the district court excluded evidence of Quinones' prior sexual misconduct under K.S.A. 2018 Supp. 60-455(d). In doing so, it noted various problems with the allegation that Quinones had previously raped Y.Q., including that the prior act had not been charged or proven, that it was not recent but had occurred about five years ago, and that it would, in effect, cause Quinones to defend himself against two allegations of rape instead of one.

It then addressed the allegation that Quinones had told Y.Q. a few days before the alleged January 2018 rape that he had digitally penetrated her. The district court noted this statement was hearsay but found the admission against interest exception applied. It then found that although this evidence was relevant, it would be more prejudicial than probative because no physical evidence could help corroborate the claim, it would require Quinones to testify to defend himself fully, and it would open him up to other crimes. It held that those pieces of evidence were inadmissible under K.S.A. 2018 Supp. 60-455.

Finally, the defense asked the court to prohibit the State from presenting evidence of prior acts of domestic violence occurring in the relationship. The defense specified that

4

they were not seeking to exclude evidence of events occurring on January 3, but sought to prohibit Y.Q. from testifying about any previous incidents. The court responded,

> "Well, the State hasn't moved to admit that. At this point, I think it's a moot point. It fits into the whole narrative of the Court trying to narrow the focus as to what happened on this specific day with limited exceptions. I will caution the State, you're going to probably really drill her on making sure that she doesn't say things or let slip things that have been ruled against. Evidently she testified to this at the prelim where I did not preside over that. She also kind of seemed to volunteer that to the nurses at the [University of Kansas Medical Center]. So, please, just make sure she understands what she's allowed to talk about and what she's not."

After a break, the State announced its intent to file an interlocutory appeal of the district court's ruling excluding the 2018 Supp. K.S.A. 60-455 evidence, which stayed the proceedings. The State later moved the court to reconsider its prior rulings excluding prior acts of sexual misconduct by Quinones against Y.Q., and allowing Quinones to introduce messages from Y.Q. to Quinones saying that she wanted to leave with their children but prohibiting the State from offering an explanation for why she had sent the messages. The district court denied the State's motion for reconsideration, and the State filed an amended notice of appeal.

*Does This Court Have Jurisdiction?*

Quinones argues that this court lacks jurisdiction to hear the State's interlocutory appeal because the district court's rulings are mere "run-of-the-mill" pre-trial evidentiary rulings that do not substantially impair the State's ability to make a prima facie case.

5

*Standard of Review*

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). Likewise, we have unlimited review over matters involving interpretation of a statute, a question of law. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

*The substantial impairment rule*

The State's right to appeal in a criminal case is strictly statutory, and this court has jurisdiction to entertain this kind of appeal only when it is taken within time limitations and in the manner prescribed by applicable statutes. *State v. Snodgrass*, 267 Kan. 185, 196, 979 P.2d 664 (1999). Interlocutory appeals by the State are permitted under K.S.A. 2018 Supp. 22-3603, which provides:

> "When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within 14 days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal." K.S.A. 2018 Supp. 22-3603.

Kansas courts have interpreted this provision broadly, meaning appeals under this statute "should include not only 'constitutional suppression' but also rulings of a trial court which exclude State's evidence so as to substantially impair the State's ability to prosecute the case." *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984). "If the exclusion of evidence does not substantially impair the State's ability to prosecute the case, the State cannot raise the issue as an interlocutory appeal." *State v. Mitchell*, 285 Kan. 1070, 1080, 179 P.3d 394 (2008) (finding no jurisdiction to address the State's appeal).

6

Although the *Newman* court rejected a more restrictive interpretation of K.S.A. 22-3603, it cautioned Kansas appellate courts against taking jurisdiction over interlocutory appeals "from every run-of-the-mill pretrial evidentiary ruling of a district court, especially in those situations where trial court discretion is involved." 235 Kan. at 35. Instead, appellate courts should exercise jurisdiction over interlocutory appeals only when the pretrial order suppressing or excluding evidence substantially impairs the State's ability to prosecute the case. *State v. Griffin*, 246 Kan. 320, 323, 787 P.2d 701 (1990); *Newman*, 235 Kan. at 35. A ruling need not technically foreclose prosecution to substantially impede it. *State v. Huninghake*, 238 Kan. 155, 157, 708 P.2d 529 (1985). This allows appellate courts to review trial court rulings on pretrial motions which may determine the case. *Newman*, 235 Kan. at 32.

The State argues that the district court's pretrial rulings substantially impair its ability to prosecute the case by excluding evidence of acts of domestic violence in the relationship and of Quinones' prior sexual assaults. It seeks to introduce evidence of Y.Q.'s allegations that Quinones raped her before the January 3rd incident and that Quinones claimed to digitally penetrate Y.Q. while she was sleeping a few days before the rape in question. The State claims this evidence is crucial because it shows Quinones' propensity to commit sexual offenses, even though the district court's ruling does not strictly foreclose prosecution. The State also seeks to present evidence of prior instances of domestic violence by Quinones, claiming that this evidence serves two purposes: (1) it counters Quinones' assertion that Y.Q. fabricated the rape charges so that she could get Quinones arrested and take their children away from him; and (2) it corroborates Y.Q.'s testimony that she did not immediately call 911 because she feared Quinones.

*The importance of the excluded evidence*

Because of the nature of the offense, many sex crime cases reduce to a "he said, she said" battle in which credibility and corroboration are crucial. "[M]any sex crimes

7

lack concrete evidence that a crime was committed, and the propensity evidence therefore is more demonstrative and necessary than propensity evidence in other kinds of prosecutions." *State v. Boysaw*, 309 Kan. 526, 534, 439 P.3d 909 (2019) (citing *State v. Borchert*, 68 Kan. 360, 362, 74 P. 1108 [1904]).

> "It is well settled that, in prosecutions for a single act forming a part of a course of illicit commerce between the sexes, it is permissible to show prior acts of the same character. Such cases are sometimes, as in *State v. Markins et al.*, 95 Ind. 464, 48 Am. Rep. 733, said to form an exception to the general rule that one crime cannot be proved in order to establish another independent crime. In fact, however, they fall within the rule already stated. Such evidence is admitted not because it proves other offenses, but in spite of that fact. Its justification is that it is corroborative of the direct evidence of the offense charged. [Citations omitted.]" *State v. Borchert*, 68 Kan. 360, 361-62, 74 P. 1108 (1904).

The Kansas legislature in 2009 recognized the unique nature of other crimes evidence in sex offense cases by enacting K.S.A. 2018 Supp. 60-455 section (d). That statute is expansive, as it "allows the admission of any propensity evidence that is relevant and probative" in sex offense cases. *Boysaw*, 309 Kan. at 539. That statute states:

> "Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense . . . evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2018 Supp. 60-455(d).

This stands in contrast to the general rule in cases not charging a sex offense—in those cases, "evidence that a person committed a crime or civil wrong on a specified occasion, is *inadmissible* to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." (Emphasis added.) K.S.A. 2018 Supp. 60-455(a).

8

The legislature has thus recognized that propensity evidence in sex offense cases is categorically different than propensity evidence in other cases.

*The evidence remaining to the State*

To determine the importance of the excluded evidence to the State's ability to make its case, we assess the evidence that remains available to the State:

> "[T]o determine whether a trial court order substantially impairs the State's ability to prosecute a case, the evidence available to the State must be assessed to determine just how important the disputed evidence is to the State's ability to make out a prima facie case. *Newman* and subsequent cases also indicate that evidence subject to a discretionary standard of admission is less likely to substantially impact the State's case. *Cf. State v. Kleypas*, 282 Kan. 560, Syl. ¶ 2, 147 P.3d 1058 (2006) (ruling made as a matter of law less likely to change at trial; therefore, if it is truly one which substantially impairs the State's case, it is proper for interlocutory appeal)." *State v. Sales*, 290 Kan. 130, 140, 224 P.3d 546 (2010) (finding appeal improvidently taken).

The following evidence that Quinones raped Y.Q. remains available to the State:

- Y.Q.'s testimony and prior statements about the events;
- Testimony of hospital employees to whom Y.Q. gave a taped statement before undergoing a sexual assault examination;
- Testimony of Y.Q.'s brother whom Y.Q. called after Quinones left the house;
- Testimony of Y.Q.'s father, who went to Y.Q.'s residence and called 911 after she reported the rape to family;
- Testimony of law enforcement officers who responded to the 911 call; and
- Results of the sexual assault examination, which corroborate Y.Q.'s reported soreness and pain.

9

The vast majority of this evidence is, however, based on Y.Q.'s statements. No question has been raised as to Y.Q.'s ability to perceive, recall, or communicate the events occurring on January 3. But the excluded evidence would corroborate her testimony and greatly strengthen the State's case by giving the jury more to consider than the credibility of the parties. The excluded evidence could also counter claims by Quinones that Y.Q. fabricated the rape charge and explain why Y.Q. feared Quinones.

*Similar cases*

We have previously held that exclusion of corroborating evidence in sex abuse cases can substantially impair the State's case even where, as here, the State had clear testimony from the victim. In *State v. Bliss*, 28 Kan. App. 2d 591, 594, 18 P.3d 979 (2001), the defendant was charged with two counts of aggravated indecent liberties with a 14-year-old child. The district court excluded evidence of other instances of sexual misconduct between the defendant and the alleged victim, prompting the interlocutory appeal. We found that we had jurisdiction because the evidence was "of substantial importance" to the State's case against the defendant. Because there were no eyewitnesses, the alleged victim's credibility was at issue—we found that the evidence was necessary to bolster the alleged victim's credibility, corroborate his testimony, and aid in establishing a course of conduct between the defendant and the alleged victim. *Bliss*, 28 Kan. App. 2d at 594. We found the exclusion substantially impaired the State's case and that this evidence was admissible. Those same factors are present here.

Similarly, in *State v. Dearman*, No. 110,798, 2014 WL 3397185, at *6 (Kan. App. 2014) (unpublished opinion), we found jurisdiction in a rape case where the district court excluded the four-year-old victim's videotaped testimony about ongoing abuse by the defendant:

"Here M.J.J.'s credibility is also at issue. As in *Bliss*, there are no eyewitnesses; it is M.J.J.'s word against Dearman's. And M.J.J.'s statements that the abuse was ongoing would corroborate the State's allegation that she was abused on February 14, 2011, as charged in the complaint. Additionally, because of M.J.J.'s age, the evidence of prior sexual abuse is particularly important. Since M.J.J. was only 4 years old at the time of the alleged abuse, it may be difficult for her to remember the particulars of what happened when she attended daycare at the Dearmans'. As a result, the video of her interview with DCF may be the only way to bolster her credibility. Without her statements from the video, the State's ability to prosecute its case would be substantially impaired. Accordingly, we have jurisdiction to consider the court's denial of the State's motion to admit the evidence under K.S.A. 2013 Supp. 22-3603." 2014 WL 3397185, at *6.

We found the exclusion substantially impaired the State's case.

Yet other cases decided after 2009, the year K.S.A. 60-455 section (d) was enacted, find that exclusion of corroborating evidence in a sex abuse case did not substantially impair the State's ability to proceed. In *Sales*, an aggravated criminal sodomy case, the district court granted the defendant's pretrial motion to exclude expert witness testimony on delayed reporting by child victims of sexual abuse. The Kansas Supreme Court analyzed the jurisdictional issue by assessing the State's case against the defendant with and without the disputed evidence:

"The State's case consisted primarily of the testimony of the victim about the abuse and that of the victim's aunt to whom she first made disclosure, combined with the testimony of Agent Hamilton concerning her interview of the victim. The victim's mother also testified to the events around the disclosure. None of this testimony was affected by the district court's pretrial ruling.

"The testimony of Agent Hamilton concerning delayed disclosure was brief, extremely general, and in essence boils down to one or two sentences indicating that it is not unusual for children who are in a relationship with their abuser to delay disclosing the abuse. The State still has the testimony of the victim, her aunt, her mother, and Agent

11

Hamilton's interview testimony. Very little is lost with the removal of Agent Hamilton's testimony on delayed disclosure. Indeed, the need for expert testimony on the issue at all is disputed." *Sales*, 290 Kan. at 140.

The court found that the excluded evidence did not substantially impair the State's prosecution, that the interlocutory appeal was improvidently taken, and that it lacked jurisdiction.

Similarly, in *State v. Guy*, No. 116,983, 2017 WL 3202977 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. 1324 (2017), the court excluded evidence in a sex offense case. The State wanted testimony to corroborate that the defendant was "riding around in the country" with an underage girl and that something sexual had happened. The State wanted others to testify that the victim's demeanor toward the defendant changed after the incident. The district court excluded the testimony and the "'testimony of any individual that relates to the victim's attitude or demeanor, other than on the day of the alleged offense.'" 2017 WL 3202977, at * 2. The State argued on appeal that the only evidence it had left to prove the crime was the victim's testimony. We disagreed, distinguishing *Bliss* and *Dearman*:

> "[U]nlike the victim in *Dearman*, the victim here is not a 4-year-old child who may forget the details at trial, but a 14-year-old girl who reported what happened to her to her stepgrandfather, her aunt, her father, and the police at different times. Unlike the victim in *Bliss*, this is not a case with substantial corroborating evidence of an ongoing sexual relationship between the victim and the defendant that would corroborate the victim's testimony regarding situations in which only the victim and the defendant were present." *Guy*, 2017 WL 3202977, at * 3.

This issue presents a close question, but on balance we find that the district court's rulings did substantially impair the State's ability to prosecute Quinones. The State's burden to make a prima facie case is not merely to put on some evidence or a

12

preponderance of evidence to meet every element of the crimes charged. Instead, the State's burden is to "present[] sufficient evidence from which a rational jury could find each of the crime's elements beyond a reasonable doubt." *State v. Williams*, 295 Kan. 506, 522, 286 P.3d 195 (2012). The evidence was necessary to bolster Y.Q.'s credibility, corroborate her testimony, and help establish a course of conduct between her and the defendant. We thus find we have jurisdiction to consider the State's interlocutory appeal.

*Did the District Court Abuse Its Discretion by Excluding Certain Evidence?*

We reach the question whether the district court erred in excluding under K.S.A. 2018 Supp. 60-455 the State's evidence of previous sexual assaults and other violence by Quinones during the couple's relationship.

*Standard of Review*

This court reviews a district court's exclusion of evidence for an abuse of discretion. K.S.A. 2018 Supp. 60-455; *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

*Analysis*

When determining whether to admit evidence, a district court must determine whether the evidence is relevant. Generally, all relevant evidence is admissible. K.S.A. 60-407(f). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). However, even if evidence is relevant, a trial court may exclude it when the court finds its probative

value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. This court reviews determinations such as these for an abuse of discretion. See *Lowrance*, 298 Kan. at 291.

The Kansas Supreme Court has recently reviewed propensity evidence in sex crime cases. *Boysaw* found that K.S.A. 2018 Supp. 60-455(d) is expansive, as it "allows the admission of any propensity evidence that is relevant and probative." 309 Kan. at 539-40. "The plain statutory language of K.S.A. 2018 Supp. 60-455(d) appears to allow such evidence without requiring a weighing of probity versus prejudice." 309 Kan. at 540. This stands in contrast to the general rule in cases not charging a sex offense—in those cases, "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2018 Supp. 60-455(a).

The only stated exception to K.S.A. 2018 Supp. 60-455(d)'s general rule that sexual propensity evidence is admissible is K.S.A. 60-445. But that statute does not require a general weighing of the probative value against the prejudicial effect. Instead, it relates solely to unfair surprise, stating:

> "[T]he judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered." K.S.A. 60-445.

No Kansas statute or rule expressly provides for the exclusion of unduly prejudicial evidence in the same way that Federal Rule of Evidence 403 does. *Boysaw*, 309 Kan. at 539. Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see *State v. Moyer*, 306 Kan. 342, 365, 410 P.3d 71 (2017) ("as long as it is 'relevant and probative,'" propensity evidence under K.S.A. 2013 Supp. 60-455[d] is admissible in sexual abuse cases).

Nevertheless, the Kansas Supreme Court has continued to require a weighing of the probative value versus prejudicial effect. *Boysaw*, 309 Kan. at 540. See, e.g., *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 613, 549 P.2d 1354 (1976); *State v. Davis*, 213 Kan. 54, 57, 515 P.2d 802 (1973). This is not because any Kansas statute or rule requires it, but because the requirement has, admittedly, been added as a matter of "judicial construct." *Boysaw*, 309 Kan. at 540. The Kansas Supreme Court has added to the plain language of K.S.A. 60-445 the requirement in every case that the district court balance the probative value of any challenged evidence against its prejudicial effect before admitting it into evidence. So we apply the balancing test here.

In *Dearman*, we noted that evidence of prior sexual abuse should rarely be excluded in sex offense cases:

> "[E]vidence of prior sexual abuse should rarely be excluded in cases involving sexual offenses. *Benally*, 500 F.3d at 1090; *Enjady*, 134 F.3d at 1433; *Prine*, 297 Kan. at 476-78; see, *e.g., State v. Remmert*, 298 Kan. 621, 628, 316 P.3d 154 (2014) (probative value of evidence of 20-year-old diversion for sexual abuse of a child outweighed undue prejudice to the defendant in a trial for aggravated criminal sodomy where the defendant denied abusing alleged victim)." 2014 WL 3397185, at *7.

Evidence of prior sexual abuse is not limited to prior convictions but extends to prior *uncharged* sex offenses:

> "Consistent with congressional intent regarding the admission of evidence tending to show the defendant's propensity to commit sexual assault or child molestation, 'courts are

15

to "liberally" admit evidence of prior uncharged sex offenses.' *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997)." *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007).

*Boysaw* stated in detail the factors a district court should weigh in balancing probative value and prejudicial effect, apparently adopting the Tenth Circuit's approach in *Benally*:

"No set test exists for weighing probative value against prejudicial effect. The Tenth Circuit has suggested certain factors to be considered, such as the similarity of the prior acts to the acts charged, the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim. See, e.g., *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998).

"In *Prine II*, 297 Kan. at 478, 303 P.3d 662, this court referred favorably to *United States v. Benally*, 500 F.3d 1085, 1090-91 (10th Cir. 2007), which incorporated other tests into the weighing test for propensity evidence in sex crimes. Citing prior decisions, the *Benally* court recommended considering specific factors in analyzing the two elements to be weighed.

"In evaluating the probative value of evidence of other crimes or civil wrongs, the district court should consider, among other factors: how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence. In evaluating the possible prejudicial effect of evidence of other crimes or civil wrongs, the district court should consider, among other factors: the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct. *Benally*, 500 F.3d at 1090-91." *Boysaw*, 309 Kan. at 541.

16

*Boysaw* found no abuse of discretion in district court's ruling that the probative value outweighed the prejudicial effect of the parties' stipulation to defendant's prior conviction of a crime of sexual assault of a child.

The district court did not have the benefit of *Boysaw*. Nonetheless, the record shows that it considered these same factors in reaching its decisions on the disputed evidence.

### *The alleged rape five years ago*

The district court determined that although evidence of Quinones' 2014 rape of Y.Q. was somewhat relevant, it was more prejudicial than probative. It noted that little if any probative value was shown "because without specificity, there's no evidence that [it] would have been done in the same manner or same intent, same time, same place, specifics, whatever." The alleged rape happened five years ago and no police report, investigation, or other evidence existed to corroborate Y.Q.'s claim. Thus, admitting evidence of a crime that Quinones was never charged with would require Quinones to defend against two allegations of rape instead of one, as the prior rape was clearly disputed. The court found this would be "extremely prejudicial" to the defendant. We find no abuse of discretion in the district court's finding that the evidence was more prejudicial than probative.

### *The hearsay statement*

Next, the district court excluded evidence that Quinones had told Y.Q. he digitally penetrated her a few days before January 3. Y.Q. had no independent recollection of the penetration. The district court noted that the evidence was hearsay but would likely be admissible as an admission against interest. See K.S.A. 2018 Supp. 60-460(j). It found the evidence relevant because of its close temporal proximity to the January 3 rape and

17

because it tended to show Quinones' pattern or intent. But it found little probative value of the evidence because no physical evidence corroborated the claim, Y.Q. did not remember which day he told her this information, and no charges were filed. And it found the evidence would prejudice the defendant because the jury could see him as "creepy or perverted," and defendant would have to testify to refute the alleged crime and he had a right not to testify. The district court found, on balance, the prejudicial effect outweighed the probative value, although it was a much closer call than the uncharged rape from five years earlier. We find no abuse of discretion in the district court's finding that the evidence was more prejudicial than probative.

*The domestic violence*

The district court also excluded Y.Q.'s testimony, given at the preliminary hearing, that she called her brother and not the police because she was afraid of Quinones and that Quinones had thrown her phone against the wall the last time she tried to call the police, several years ago. The district court noted that the State had not sought to admit prior evidence of domestic violence, but that the court wanted to focus on the events of January 3.

After the district court ruled that the State could not introduce evidence of prior incidents of domestic violence, the State moved for reconsideration, including a proffer of the evidence it wished to introduce. The State argued that if the court admitted two 2017 messages in which Y.Q. had threatened to leave with the children, the State would need to present evidence to show the relationship between the couple to help explain why Y.Q. sent the messages. The State would offer Y.Q.'s testimony that Quinones was physically, verbally, and emotionally abusive of her and their children, including two instances of abuse from 2011 and the alleged rape in 2014. The district court denied the motion for reconsideration, stating it found no reason to change any of its prior rulings.

18

The excluded evidence is not sexual propensity evidence so we analyze it under K.S.A. 2018 Supp. 60-455's general principles. The State sought to admit this evidence under K.S.A. 2018 Supp. 60-455(b). That exception provides that evidence that a person committed a crime or civil wrong on a specified occasion, although not admissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion, "is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The State contends that the excluded evidence is admissible to show plan, preparation, and motive—it counters defendant's assertions that Y.Q. fabricated the rape charge so that she could take away their children. Yet the State does not show how evidence of defendant's violence in 2011 or 2014 shows his plan, preparation, or motive to rape Y.Q. in January of 2018.

The limits of the district court's ruling here are not clear. It permitted the defendant to admit the two 2017 messages in which Y.Q. had threatened to leave with the children, but also permitted the State to go into the reasons why Y.Q. sent the messages, saying:

> "[T]hat's something Mr. Olson can question the victim on and it's something that the State should have a good chance to redirect on to get better context or figure out if the victim was being serious or what her intentions were in making the statements. All the lovey-dovey stuff is out. There's two specific instances, this again on September 5th and December 1st, those chains of texts or messages can be allowed in and again because I think they are somewhat relevant, but the State can push back against the relevance, of course, through their questioning."

It appears that the district court granted the State some leeway on this topic, and its denial of the State's motion for reconsideration did not alter its rulings, which remain subject to clarification and revision at trial. Motions in limine are "used to invoke a trial judge's inherent power to control proceedings, to exclude inadmissible evidence, and to

19

prevent undue prejudice." *State v. Smith*, 46 Kan. App. 2d 939, 943, 268 P.3d 1206 (2011). "A ruling on a motion in limine is temporary in nature and is subject to revision at trial in light of the evidence that is actually presented." 46 Kan. App. 2d at 943. So the issues raised here can also be raised at trial and are subject to revision. We find no abuse of discretion in the district court's rulings, as we cannot say that no reasonable person would take the view it adopted.

Affirmed.