No. 90,650

STATE OF KANSAS, *Appellant,* v. GARY W. KLEYPAS, *Appellee.*
147 P.3d 1058

Opinion filed December 8, 2006.

*John K. Bork,* assistant attorney general, argued the cause, and *Autumn L. Fox,* assistant attorney general, and *Phill Kline,* attorney general, were with him on the briefs for appellant.

*Jessica R. Kunen,* of Lawrence, argued the cause, and *Richard Ney,* of Wichita, and *Sean O'Brien,* of Kansas City, Missouri, were with her on the briefs for appellee.

The opinion of the court was delivered by

*Per Curiam:* The question we must resolve in the State's interlocutory appeal is whether evidence of stalking is admissible and relevant in the death penalty phase of a capital murder case to establish the statutory aggravating factor that the killing was done in a heinous, atrocious, or cruel manner. We answer the question yes, reverse the district court decision to the contrary, and remand for further proceedings concerning relevancy.

## FACTUAL BACKGROUND

Defendant Gary W. Kleypas was convicted of, *inter alia*, capital murder in the death of C.W. and sentenced to death. In *State v. Kleypas*, 272 Kan. 894, 40 P.3d 139 (2001), *cert. denied* 537 U.S. 834 (2002), this court overturned Kleypas' death sentence and remanded to the district court for a new penalty phase hearing.

On March 4, 2003, Kleypas filed a motion in limine seeking to bar the testimony of many of the State's intended witnesses on the grounds of relevance. In his motion, Kleypas alleged that the majority of the witnesses would not provide information relevant to any of the aggravating circumstances. The State had identified three aggravating factors it intended to prove at the penalty phase hearing: (1) Kleypas was previously convicted of a felony in which he inflicted great bodily harm, disfigurement, dismemberment, or death on another; (2) Kleypas committed the present crime in order to avoid or prevent a lawful arrest or prosecution; and (3) Kleypas committed the crime in an especially heinous, atrocious, or cruel manner. See K.S.A. 21-4625(1), (5), and (6). In response to Kleypas' motion, the State alleged that much of the testimony of the witnesses would go toward proving the crime was committed in an especially heinous, atrocious, or cruel manner, in that it showed Kleypas' stalking of the victim, which inflicted severe mental anguish on her.

A hearing on the motion in limine was held on April 7, 2003. Kleypas contended that evidence of stalking was irrelevant to prove that the murder was committed in an especially heinous, atrocious, or cruel manner. According to Kleypas, the legislature had specifically amended the language regarding the "heinous, atrocious or cruel" aggravating factor with regard to the hard 50 sentencing procedure to add that stalking was sufficient to satisfy that aggravator, but it had failed to make a similar change to the death penalty statutes, thus evidencing an intent that stalking would not be relevant to that aggravator in a death penalty proceeding. The State acknowledged that the amendment to the hard 50 procedure did not apply in death penalty cases and that stalking could not in and of itself be sufficient to show that the murder was committed in

an especially heinous, atrocious, or cruel manner. However, the State argued that the evidence of stalking was still relevant in making a determination of whether the killing was done in a heinous, atrocious, or cruel manner in a death penalty case.

The district judge ruled as a matter of law that stalking is not relevant to the heinous, atrocious, or cruel aggravating factor in death penalty proceedings:

"The aggravating factors in death penalty cases as we know are listed in K.S.A. 21-462[5]. The aggravating factors in non-death penalty cases are listed in 21-4636. Aggravating factor F in 21-4636 indicates that in determining whether a victim died in a heinous, atrocious and cruel manner, stalking of the victim is one of the things that can be considered in [determining] whether to assess the Hard 50. This language is not included in 21-462[5] and that is, frankly, problematic to the Court. If you look at K.S.A. 21-4636 it was amended in 1999 to include that additional language. That additional language was not in the original legislation which was passed in 1994, the same time the death penalty aggravating factors were enacted. This seems to speak to legislative intent.

"Why amend [21-]4636 [in] non-death penalty cases and not also amend [21-]462[5] in death penalty cases? And it speaks to legislative intent and that becomes problematic, frankly, to the State's position. I think heinous, atrocious and cruel speaks to the actual manner that death was inflicted for purposes of death penalty cases. I can't begin to presume why the legislature modified 4636 and did not similarly address 462[5] but that is, in fact, the case. That is, in fact, exactly what they did and we know that when that happens the Appellate Courts will indicate that speaks to legislative intent which tells us that that should not be included in death penalty litigation.

"And, again, mitigating factors are limited to what is included in 4626. I said 4626, I think I mean 4625, yeah, 4625 [for aggravating factors]. The Court is going to find that stalking will not be submitted to the sentencing jury for the following— by reason of the Court's aforementioned reasons. I think the failure to include the stalking language in 4625 speaks to legislative intent. Legislature does not want that information submitted to the jury. I also find that heinous, atrocious and cruel will be directed to the manner in which death was inflicted."

Before addressing the merits of this appeal, we consider Kleypas' argument on jurisdiction. He contends that the plain language of K.S.A. 22-3603 does not allow an interlocutory appeal in this instance, as the statute speaks to orders issued "prior to the commencement of trial of a criminal action," while the instant proceeding is technically a retrial of the penalty phase of a criminal action. K.S.A. 22-3603 authorizes an interlocutory appeal by the

State "[w]hen a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission."

It is true that the language of K.S.A. 22-3603 speaks of appealing orders issued prior to the commencement of a trial. Furthermore, Kleypas is correct in noting that as a general rule, a criminal statute should be strictly construed in favor of the accused. *State v. Jenkins*, 272 Kan. 1366, 1381, 39 P.3d 47 (2002). However, this strict construction simply means that words are given their ordinary meaning, with any reasonable doubt decided in favor of the accused. 272 Kan. at 1381.

K.S.A. 22-3603 was last modified in 1975 (L. 1975, ch. 178, sec. 23; effective January 10, 1977). At that time, there was no provision for a separate jury sentencing in criminal cases. Had there been, it seems clear that the language of the statute would have encompassed orders issued prior to the trial or retrial of a penalty phase in a capital murder case in the same manner that it applies to orders issued prior to a trial or retrial of the guilt phase in a regular criminal case. There is no reasonable doubt as to the intention of the legislature and, as a result, K.S.A. 22-3603 applies to this appeal.

Kleypas next argues that an order excluding evidence on the basis of relevance is not a proper subject for interlocutory appeal. He contends that such appeals are not favored, both because they do not relate to evidence seized in violation of a constitutional right and because the district court's ruling on a motion in limine is not a final ruling, but is subject to change at trial.

While Kansas courts initially interpreted the term "suppressing evidence" in K.S.A. 22-3603 to mean the constitutional suppression of evidence illegally obtained by the government, and did not allow appeals from other decisions, this court adopted a more expansive definition that included other rulings of the trial court which "substantially impair" the State's ability to prosecute a case. *State v. Griffin*, 246 Kan. 320, 323, 787 P.2d 701 (1990). Even though Kleypas argues that an appeal from a motion in limine excluding allegedly relevant evidence is not a proper subject, this court ad-

dressed such an appeal under K.S.A. 22-3603 in *Griffin*. See 246 Kan. at 324.

It is true that a ruling excluding evidence for lack of relevance may be subject to change at trial. However, because the district court's ruling in this case was made as a matter of law, that is, that stalking is never relevant to the heinous, atrocious, or cruel aggravating factor in a death penalty case, there is little potential that the district court's ruling will change. Therefore, if the district court's ruling is truly one which substantially impairs the State's ability to prosecute its case, this case is a proper one for interlocutory appeal under K.S.A. 22-3603. See *Griffin*, 246 Kan. at 324-26.

Kleypas argues that the exclusion of the evidence in this case does not substantially impair the State's ability to prosecute its case. However, the State's theory was that Kleypas' stalking of the victim, as evidenced by his purchasing the shoes from her, his obscene telephone calls to her, and other actions such as breaking into her apartment and stealing a camera, constituted the infliction of serious mental anguish upon the victim before the killing. If the State is correct in its assertion that stalking is relevant to show this factor, the district court's order preventing relevant evidence on stalking does substantially burden the State's ability to prosecute its case. As a result, the State has met the requirements for an interlocutory appeal under K.S.A. 22-3603.

*Exclusion of Evidence*

The State argues that the district court erred in ruling that stalking, as a matter of law, is not relevant to the heinous, atrocious, or cruel aggravating factor in death penalty proceedings. According to the State, even though proof of stalking itself does not establish the factor as it would in hard 50 cases, stalking may nevertheless be relevant in determining whether the victim suffered severe mental anguish by reason of defendant's stalking, thereby providing evidence that the capital murder was committed in a heinous, atrocious, or cruel manner. We agree.

The district court's decision regarding stalking was based on the differences which exist between the statute establishing aggravat-

ing circumstances for a sentence of death in capital murder, K.S.A. 21-4625(6), and the statute establishing aggravating circumstances for a sentence of 50 years without parole (the hard 50), K.S.A. 2005 Supp. 21-4636(f). "The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

Prior to 1999, both statutes described the heinous, atrocious, or cruel aggravating factors identically, stating only the requirement that "[t]he defendant committed the crime in an especially heinous, atrocious or cruel manner." See K.S.A. 21-4625(6); K.S.A. 21-4636(f). The consistent interpretation of this phrase in connection with the then hard 40 penalty was that it required that the victim suffer serious physical abuse or mental anguish before death. See, *e.g.*, *State v. Follin*, 263 Kan. 28, 49-51, 947 P.2d 8 (1997).

In January 1999, this court decided *State v. Spry*, 266 Kan. 523, 973 P.2d 783 (1999). In *Spry*, we found there was insufficient evidence to establish the heinous, atrocious, or cruel aggravating factor where the defendant murdered his ex-wife with an axe. 266 Kan. at 531-36. The decision was based on the evidence that the victim was sleeping when she was struck multiple times with an axe and there were no signs that she was conscious of the physical assault. In doing so, we noted that the State's argument in support of the aggravating factor was solely based on the alleged " 'overkill' " of hitting the victim multiple times with the axe and that *"[t]here is no argument or even discussion here that* [the victim] *suffered physical or mental anguish before death."* 266 Kan. at 533-34. Although there was some evidence that the defendant had in fact stalked the victim, the State did not argue the stalking as a basis for applying the aggravating factor, and there was no evidence that would establish beyond a reasonable doubt that the stalking caused severe mental anguish. See 266 Kan. at 533 ("We find no evidence in the record that Spry ever threatened [the victim's] life or that she felt that she was in mortal danger from Spry.").

In response to our decision in *Spry*, the legislature passed L. 1999, ch. 138, sec. 1 (H.B. 2440), which amended K.S.A. 21-4636(f) by adding the following language:

"A finding that the victim was aware of such victim's fate or had conscious pain and suffering as a result of the physical trauma that resulted in the victim's death is not necessary to find that the manner in which the defendant killed the victim was especially heinous, atrocious or cruel. In making a determination that the crime was committed in an especially heinous, atrocious or cruel manner, any of the following conduct by the defendant may be considered sufficient:
  (1) Prior stalking of or criminal threats to the victim;
  (2) preparation or planning, indicating an intention that the killing was meant to be especially heinous, atrocious or cruel;
  (3) infliction of mental anguish or physical abuse before the victim's death;
  (4) torture of the victim;
  (5) continuous acts of violence begun before or continuing after the killing;
  (6) desecration of the victim's body in a manner indicating a particular depravity of mind, either during or following the killing; or
  (7) any other conduct in the opinion of the court that is especially heinous, atrocious or cruel." K.S.A. 2005 Supp. 21-4636(f).

No similar amendment was made to the heinous, atrocious, or cruel aggravating circumstance contained in K.S.A. 21-4625(6). Further, review of the legislative history indicates that H.B. 2440 was not meant to affect K.S.A. 21-4625(6). See Testimony of Representative Kent Glasscock, sponsor, before House Judiciary Committee, March 3, 1999 (stating that the bill "does not change the aggravating factors for capital punishment").

The district court in the instant case apparently applied the maxim *expressio unius est exclusio alterius* (the inclusion of one thing implies the exclusion of another) to reason that because stalking was expressly included in the amendment to K.S.A. 21-4636(f) and K.S.A. 21-4625(6) was not similarly amended, stalking was *not relevant* to prove that a capital murder was heinous, atrocious, or cruel under K.S.A. 21-4625(6).

Examination of the amendment to K.S.A. 21-4636(f) contradicts this reasoning and finding by the district court. While the amendment adds some factors that would not have been considered relevant to a preamendment determination of whether a murder was heinous, atrocious, or cruel, such as the desecration of the victim's body, it also includes some factors that previously would have been clearly relevant prior to the amendment, such as "infliction of mental anguish or physical abuse before the victim's death." See K.S.A. 2005 Supp. 21-4636(f)(3), (6). Thus, it is apparent that the amend-

ment to the hard 50 statute was meant to both expand and clarify the statute. The fact that K.S.A. 21-4625(6) was not similarly amended does not reflect a legislative intent that the factors listed in the hard 50 amendment are not relevant to show that a capital murder was committed in a heinous, atrocious, or cruel fashion. Rather, it evidences only an intent that the heinous, atrocious, or cruel aggravator in K.S.A. 21-4625(6) be interpreted in the same manner as the preamendment aggravator in K.S.A. 21-4636(f).

The question, then, is whether stalking of the victim is relevant to establish the murder was committed in an especially heinous, atrocious, or cruel manner. Other jurisdictions which have considered this type of issue have ruled that evidence of stalking can be relevant in determining whether a murder was committed in an especially heinous, atrocious, or cruel manner. In *Harvard v. State*, 414 So. 2d 1032, 1036 (Fla. 1982), the Florida Supreme Court held that there was sufficient evidence to satisfy the heinous, atrocious, or cruel aggravating factor where the defendant had stalked his ex-wife by engaging in a series of harassing actions, including sending her a Christmas card stating " 'You will never see Christmas.' " In *Rieber v. State*, 663 So. 2d 985, 992-93 (Ala. Crim. App. 1994), the Alabama Court of Criminal Appeals held that the fact that the defendant had stalked the victim, a convenience store clerk, for several days, and that the victim was apprehensive and afraid of the defendant, was relevant in determining whether the murder was committed in an especially heinous, atrocious, or cruel manner. In *State v. Cooper*, 718 S.W.2d 256, 257-60 (Tenn. 1986), the Tennessee Supreme Court found the heinous, atrocious, or cruel aggravator satisfied where the defendant harassed, threatened, and intimidated his estranged wife to the point of distraction for several weeks prior to the homicide. The District of Columbia Court of Appeals made a slightly more specific finding that evidence that defendant stalked the victim, "who was aware of the possibility of violence which awaited her," was significant in the determination that the murder was committed in an especially heinous, atrocious, or cruel manner. *Parker v. United States*, 692 A.2d 913, 917 n.6 (D.C. 1997).

It is well established in Kansas that evidence of a fact is relevant if it renders the desired inference more probable than it would be without the evidence or if it has *any tendency* in reason to prove any material fact. See K.S.A. 60-401(a), (b); *State v. Wimbley*, 271 Kan. 843, 853, 26 P.3d 657 (2001). We have held that a murder is committed in an especially heinous, atrocious, or cruel manner for purposes of the death penalty aggravating factor where the victim suffers "serious physical abuse or mental anguish before death." *Kleypas*, 272 Kan. at 1025-28. Mental anguish includes a victim's uncertainty as to his or her ultimate fate. 272 Kan. at 1026. Accordingly, evidence that a defendant stalked the victim and the victim was aware of the possibility of the violence which awaited him or her can be relevant to the determination of whether the capital murder was committed in an especially heinous, atrocious, or cruel manner for purposes of the death penalty.

Kleypas also argues that admission of the evidence would offend the Ex Post Facto Clause of the United States Constitution because the amendments to the hard 50 statute, expanding the definition of the heinous, atrocious, or cruel factor to include such acts as stalking, was not part of the death penalty statute or the hard 40 statute at the time the crime was committed in 1996. This argument is without merit. Clearly, the expanded definition of the heinous, atrocious, or cruel aggravating factor applicable in hard 50 cases does not apply in death penalty cases. The State is not arguing that it does. Rather, the question is whether, under the definition of heinous, atrocious, or cruel applicable in death penalty cases, stalking can be relevant. The State argues it is relevant. There is no implication of the Ex Post Facto Clause in this argument.

Furthermore, Kleypas argues that allowing stalking evidence as relevant to establish the heinous, atrocious, or cruel aggravator, renders that aggravator unconstitutionally vague. The question regarding the vagueness of an aggravating factor is whether the jury can understand the core meaning of the factor and whether the factor provides the sentencer with a principled means of guiding its discretion. See *Tuilaepa v. California*, 512 U.S. 967, 972-75, 129 L. Ed. 2d 750, 114 S. Ct. 2630 (1994); *Maynard v. Cartwright*, 486 U.S. 356, 361-64, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988).

Interpreting the definition of the phrase "heinous, atrocious or cruel" to mean that the victim suffered "serious physical abuse or mental anguish before death" satisfies this requirement. The jury can certainly understand when stalking activity causes the victim to suffer mental anguish prior to death.

Kleypas contends that much of the information sought to be introduced is victim impact testimony and therefore should not be admitted. Once again, however, this is not the issue. The scope of this appeal is whether the district court erred in finding that evidence of stalking, as a matter of law, is not relevant to the heinous, atrocious, or cruel aggravating factor in a death penalty case. The only question remaining is whether the evidence sought to be introduced is relevant to show "serious physical abuse or mental anguish before death."

" 'Generally, all relevant evidence is admissible. K.S.A. 60-407(f). Relevant evidence is defined as "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). Where the probative value is substantially outweighed by the risk of unfair prejudice, even relevant evidence may be excluded by the judge. [Citations omitted.]' " *State v. Patton*, 280 Kan. 146, 156, 120 P.3d 760 (2005) (quoting *State v. Meeks*, 277 Kan. 609, 618, 88 P.3d 789 [2004]).

If evidence is relevant, it is admissible at the penalty phase. Evidence of stalking can satisfy that requirement and, therefore, can be admissible in certain circumstances. That is not to say that all stalking evidence is admissible. Certainly, evidence of stalking where the victim is unaware of the stalking has no bearing on the question of mental anguish. Further, stalking which is so remote in time as to be unconnected to the actual murder would also not be relevant. However, where the stalking is directly related to the murder, is temporally significant, and causes the victim to be aware of the possibility of the violence which awaits him or her, it is indeed relevant and may be considered by the sentencer.

In this case, the district court held that stalking was not relevant as a matter of law and, thus, did not determine whether the testimony proffered by each specific witness was otherwise relevant and admissible. Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with directions to consider whether the particular stalking evidence sought

to be admitted by the State is in fact relevant to the question of whether the victim suffered "serious physical abuse or mental anguish" prior to death.

Reversed and remanded with directions.