No. 124,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GARY WAYNE KLEYPAS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


SYLLABUS BY THE COURT


1.

Because of the importance of access to habeas proceedings and the grave nature of capital cases, courts must employ the same elevated awareness for fairness in reviewing a K.S.A. 60-1507 proceeding as applies in other areas of death-penalty review.


2.

In Kansas, a party has the right to represent themselves or to be represented by counsel, but they have no right to hybrid representation. A litigant who is represented by counsel has no right to dictate the procedural course of their representation by counsel.


3.

Under K.S.A. 22-4506(d), an indigent person convicted of capital murder has a statutory right to counsel in district court upon a filing of a petition for writ of habeas corpus or a motion attacking sentence under K.S.A. 60-1507.


4.

Before a district court permits a death-sentenced inmate to withdraw a K.S.A. 60-1507 motion and waive postconviction relief, the court must conduct a hearing to

1

determine (1) whether the inmate is competent to waive postconviction relief and (2) whether the inmate's waiver of postconviction relief is being made knowingly and voluntarily with an understanding of the consequences.

5.

      A plaintiff's voluntary dismissal of an action under K.S.A. 2021 Supp. 60-241(a)(1) is without prejudice.

      Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed December 16, 2022. Reversed and remanded with directions.

      *Julia S. Spainhour* and *Jeffrey Gregory Dazey*, of Kansas Capital Habeas Defender Office, for appellant.

      *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., MALONE and BRUNS, JJ.

      MALONE, J.:  Gary Wayne Kleypas is a prisoner under sentence of death. This appeal involves purely procedural issues arising from the dismissal with prejudice of Kleypas' K.S.A. 60-1507 motion. The district court ordered the dismissal after receiving a handwritten, pro se letter from Kleypas asking that his case not proceed. The K.S.A. 60-1507 motion was drafted by attorneys who had been assigned to Kleypas' case by the State Board of Indigents' Defense Services (SBIDS) but were not yet officially appointed by the district court despite entering an appearance on his behalf, affixing their names to his motion, being noted as his counsel of record, and asking the court to appoint them as his attorneys. Even so, the district court dismissed Kleypas' case with prejudice based on his letter, without sending any notification to his attorneys or holding a hearing. The

2

district court later denied Kleypas' motion to alter or amend judgment, which included an affidavit from Kleypas disclaiming any intent to dismiss his motion.

On appeal, Kleypas raises five interrelated issues: First, Kleypas argues that the district court erred by interpreting his pro se letter as an unambiguous request for voluntary dismissal. Second, he contends that if his letter was a request for dismissal, the district court erred by granting the dismissal with prejudice. Third, Kleypas asserts the district court erred when it failed to notify his counsel of its intent to dismiss the K.S.A. 60-1507 motion before entering the order of dismissal. Fourth, he claims the district court erred by failing to follow the procedure in K.S.A. 22-4506(d), which provided him a statutory right to counsel and other procedural safeguards. Finally, he contends the district court erred by granting a dismissal with prejudice—effectively a waiver of his right to pursue any postconviction relief—without first conducting a hearing to ensure that he was competent to do so and that his waiver was knowing and voluntary.

We need not decide whether the district court erred by interpreting Kleypas' letter as an unambiguous request to dismiss his K.S.A. 60-1507 motion. Even if Kleypas' letter was an unambiguous request to dismiss his case, we hold the district court erred by dismissing the K.S.A. 60-1507 motion without notifying Kleypas' counsel of record and without setting the matter for a hearing to determine whether Kleypas was competent to dismiss his motion and whether he was knowingly and voluntarily waiving his right to postconviction relief. Finally, even if the district court had legal grounds to dismiss the K.S.A. 60-1507 motion, it erred by dismissing the motion with prejudice.

FACTUAL AND PROCEDURAL BACKGROUND

In 1997, a jury convicted Kleypas of capital murder, attempted rape, and aggravated burglary—the facts of the case are not relevant to this appeal and are laid out in full in *State v. Kleypas*, 272 Kan. 894, 40 P.3d 139 (2001) (*Kleypas I*), *cert. denied* 537

3

U.S. 834 (2002), *abrogated in part by Kansas v. Marsh*, 548 U.S. 163, 169, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006). A jury sentenced Kleypas to death. On appeal, the Kansas Supreme Court affirmed Kleypas' convictions but reversed his death sentence and remanded for a new sentencing proceeding. *Kleypas*, 272 Kan. at 915, 1123-24.

The State later filed an interlocutory appeal on an evidentiary issue, which was decided in *State v. Kleypas*, 282 Kan. 560, 147 P.3d 1058 (2006) (*Kleypas II*). On remand, in December 2008, a jury once again sentenced Kleypas to death. Kleypas appealed, and the Kansas Supreme Court affirmed his death sentence but reversed his conviction for attempted rape and remanded his remaining noncapital conviction, aggravated burglary, for resentencing. *State v. Kleypas*, 305 Kan. 224, 258-64, 382 P.3d 373 (2016) (*Kleypas III*), *cert. denied* 137 S. Ct. 1381 (2017). After the United States Supreme Court denied Kleypas' petition for certiorari on March 27, 2017, the Kansas Supreme Court issued a mandate on April 11, 2017.

After Kleypas' direct appeals of his death sentence became final, SBIDS assigned Paul S. McCausland of Young Bogle McCausland Wells & Blanchard P.A. and Julia Spainhour of the Kansas Capital Habeas Defender Office to prepare a K.S.A. 60-1507 motion on Kleypas' behalf. We will refer to these attorneys as Kleypas' SBIDS attorneys. On January 23, 2018, the SBIDS attorneys filed the K.S.A. 60-1507 motion—which alleged 47 grounds for relief—in Crawford County District Court. The motion's opening paragraph stated:  "This motion is filed for Mr. Kleypas by and through attorneys assigned by the State Board of Indigents' Defense Services (SBIDS) to investigate his case and prepare a motion on his behalf." The motion was signed by the attorneys and does not include Kleypas' signature. On the same day, one of the SBIDS attorneys filed a separate entry of appearance on Kleypas' behalf.

The SBIDS attorneys also filed a motion for appointment of counsel on Kleypas' behalf, requesting the district court to find Kleypas indigent and to officially appoint

4

them to represent Kleypas in district court. The SBIDS attorneys also filed a request for a status conference, asking the district court to docket the case under a civil case number and to set deadlines for discovery. The clerk of the district court docketed Kleypas' motion under 2018-CV-000005 and recorded the appearances of the SBIDS attorneys as his "retained" counsel. The deputy solicitor general entered an appearance for the State, but the record does not reflect that the State ever answered the K.S.A. 60-1507 motion.

On March 26, 2018, the district court received and filed a notarized, handwritten letter from Kleypas dated March 19, 2018. The letter stated:

> "Dear Judge Bolton-Fleming:
> "Since January 24, 2018, I've tried to find guidance/ assistance to help inform me of how to pursue the matter I'm presenting to you at this time. Being unsuccessful in my efforts I feel my only recourse is to contact you personally. Hoping not to violate any possible rules/regulations of the court regarding such contact I will be brief in providing a concise, direct statement of fact I strongly feel you should be made aware of.
> "The matter before you—2018-CV-00005-P: Gary Wayne Kleypas vs. State of Kansas— was filed without my consent and/or approval and is a matter that should not proceed.
> "Respectfully,
> "Gary W. Kleypas"

Kleypas also sent the letter to counsel for the State, but he did not send a copy to the SBIDS attorneys who had filed the K.S.A. 60-1507 motion on his behalf. On April 10, 2018, Kleypas' habeas case was reassigned from Judge Lori Bolton Fleming to Judge Kurtis I. Loy. The next day, without sending notice to the SBIDS attorneys or holding a hearing, Judge Loy entered an order of dismissal, dismissing the case "with prejudice, at the request of the movant, Gary W. Kleypas."

On May 3, 2018, the SBIDS attorneys who had drafted Kleypas' K.S.A. 60-1507 motion, moved to alter or amend judgment under K.S.A. 2017 Supp. 60-259 and K.S.A.

5

2017 Supp. 60-260, asking the district court to reconsider its order and to reinstate Kleypas' motion. Their motion appended many attachments, including an affidavit from Kleypas, dated April 16, 2018, in which he stated that his prior letter had not been "a complete statement of [his] intent at that time"; that he did not intend for his K.S.A. 60-1507 motion to be dismissed; and that he did not know that his "letter would result in such action by the Court." The State responded to the motion and argued that Kleypas had presented "no justification for the relief he [sought] other than suggesting he has changed his mind." Kleypas' SBIDS attorneys replied on June 21, 2018, contending that Kleypas' affidavit showed that the court had misinterpreted his pro se letter. The reply explained that the SBIDS attorneys had established an attorney-client relationship long before filing the motion and that "[s]ignificant communications between Mr. Kleypas and his counsel [had taken] place."

More than a year later, the State filed a motion asking the district court to finally rule on the matter. Kleypas then filed a renewed motion seeking to tack on another argument to his motion to alter or amend, challenging the Kansas death penalty statute under *Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, 440 P.3d 461 (2019). The State responded and opposed any such supplementation. The case then lay dormant for nearly two more years, until the district court held a status conference on March 15, 2021.

On April 16, 2021, the district court finally conducted a hearing on the parties' motions; all parties, including Kleypas, were present on Zoom. The district court heard arguments from both parties. Kleypas' attorneys stated that despite communication difficulties, they prepared the K.S.A. 60-1507 motion that was filed in January 2018 with Kleypas' agreement and participation. They argued that Kleypas' letter to the district court requested assistance from the court and represented a complaint about his disagreements with their drafting decisions, not a request for the matter to be dismissed wholesale. They also asserted that Kleypas' affidavit refuted the district court's interpretation of his letter as a request for dismissal. For its part, the State contended that Kleypas' letter was an

6

unambiguous request for a voluntary dismissal of the motion and that Kleypas had merely changed his mind, which it argued was an insufficient ground to grant relief.

After listening to the parties' arguments, the district court ruled from the bench. The district court noted that the SBIDS attorneys had "done an excellent job" but found that Kleypas' letter was unambiguous and manifested his intent for his K.S.A. 60-1507 motion to be dismissed. The district court found that Kleypas appeared to be abreast of what was going on with his motion because he knew the case number and where to address his letter. The district court found that Kleypas' decision not to send the letter to his attorneys showed that "he was making a deeply reasoned decision as to what he was doing." Finally, the district court found it had committed no errors of fact or law justifying relief under K.S.A. 2020 Supp. 60-259 or K.S.A. 60-260. On May 3, 2021, the district court entered a journal entry of the motion hearing, outlining the bases for denying any relief. Kleypas timely appealed the district court's judgment.

*Heightened scrutiny involving death sentence*

We will address each of Kleypas' issues on appeal, but not in the same order as he presents them in his brief. As a threshold matter, Kleypas argues that this court should apply heightened scrutiny to the issues he has raised in this appeal because he is a death-sentenced prisoner. The State argues that Kleypas' heightened scrutiny argument is a "red herring" because it does not substantively change this court's standard of review. Kleypas' case presents the first appeal of a K.S.A. 60-1507 proceeding in a capital case since Kansas reinstated the death penalty in 1994, and we have no Kansas caselaw addressing whether the heightened scrutiny that may apply in a direct appeal from a death sentence also applies in this appeal from a postconviction proceeding in a capital case.

The United States Supreme Court has oft noted that death is qualitatively different than any other punishment that the state can impose. See, e.g., *Gardner v. Florida*, 430

7

U.S. 349, 357, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). Similarly, in one of Kleypas' prior appeals, the Kansas Supreme Court echoed that "[a] sentence of death is different from any other punishment, and accordingly there is an increased need for reliability in the determination that death is the appropriate sentence." *Kleypas III*, 305 Kan. at 274. Still, the *Kleypas III* court noted that even with the need to apply heightened scrutiny, there is no substantive change to the standard of review applied to the issues raised in a death penalty case. 305 Kan. at 275. Rather, "the already applicable standard should be applied and heightened reliability in both the guilt-phase and penalty-phase proceedings must be ensured." 305 Kan. at 275. In other words, the heightened scrutiny requirement for capital cases does not change the standard of review, but it requires courts take a closer and more vigilant review of issues whenever a death sentence is involved.

"The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969); see also *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("[F]undamental fairness is the central concern of the writ of habeas corpus."). Because of the importance of access to habeas proceedings and the grave nature of capital cases, we conclude that this court must employ the same elevated awareness for fairness in reviewing Kleypas' habeas appeal as applies in other areas of death-penalty review. See *Douglas v. Workman*, 560 F.3d 1156, 1194 (10th Cir. 2009) (noting reluctance "to create distinct rules applying differently to capital habeas proceedings," but still applying a "heightened concern for fairness . . . where the state is prepared to take a man's life").

DID THE DISTRICT COURT ERR BY INTERPRETING KLEYPAS' LETTER AS AN UNAMBIGUOUS REQUEST FOR VOLUNTARY DISMISSAL?

Kleypas first argues that the district court erred by interpreting his letter as an unambiguous request to dismiss his K.S.A. 60-1507 motion. He argues that the plain

language of the letter was equivocal and therefore insufficient to show an explicit intent to dismiss without further inquiry from the district court. He also argues that this court should consider Kleypas' unique circumstances when construing the written language of his letter and whether he intended to dismiss his K.S.A. 60-1507 motion. The State counters there was no ambiguity in Kleypas' letter and that it was a simple and direct request to voluntarily dismiss the K.S.A. 60-1507 motion.

Before delving into the content of Kleypas' letter, a few observations are warranted about whether Kleypas had legal counsel or was unrepresented when he sent his letter to the district court. Although the parties agree that the lawyers assigned by SBIDS prepared (and signed and submitted) Kleypas' K.S.A. 60-1507 motion, the State emphasizes that Kleypas acted as a pro se, unrepresented party because the district court did not appoint him an attorney. This is partially true—at least to the extent that the district court did not formally appoint Kleypas' attorneys. Both parties appear to draw this distinction between counsel *assigned* by SBIDS to aid Kleypas and counsel *appointed* by the district court. In their own motion seeking appointment to Kleypas' case, the SBIDS attorneys stated that "Kleypas, *by and through counsel* assigned to assist him . . . has filed a *pro se* Motion Pursuant to K.S.A. 2016 Supp. 60-1507[.]" (Emphasis added.)

But just because counsel called the pleading a pro se habeas motion does not make it so. The record reflects that the SBIDS attorneys developed an attorney-client relationship with Kleypas, drafted the K.S.A. 60-1507 motion with his assistance, submitted the motion with their signatures (not Kleypas') affixed to the document, entered an appearance on his behalf, asked the court to find Kleypas indigent and appoint them as his attorneys, and requested a status conference. All these acts point toward the conclusion that Kleypas was being represented by counsel, even though the district court had not officially appointed counsel. We will discuss this issue more thoroughly in the next section of this opinion which addresses whether the district court erred in failing to notify the SBIDS attorneys before it entered the order of dismissal.

9

Although the parties dispute whether the K.S.A. 60-1507 motion was a pro se pleading, they agree that Kleypas' handwritten letter to the district court was filed pro se. And the parties agree that "[w]hether the district court correctly construed a pro se pleading is a question of law subject to unlimited review." *State v. Richardson*, 314 Kan. 132, Syl. ¶ 4, 494 P.3d 1280 (2021). Pro se pleadings must be liberally construed giving effect to content over form. *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010).

The district court found that the substance of Kleypas' letter focused on two points: First, he was looking for a way to communicate with the district judge assigned to the case. Second, and more importantly, he was unambiguously requesting that the court dismiss his K.S.A. 60-1507 motion. With this interpretation of the letter, the district court entered an order dismissing the motion with prejudice, without holding a hearing or otherwise contacting the attorneys of record, who had executed and signed the motion.

At the hearing on Kleypas' motion to alter or amend, the district court recited the substantive portion of the letter and found that the "plain and ordinary language [of the letter] makes clear to this Court that [dismissal] is what he was seeking." The journal entry from that hearing similarly states: "The Court finds the pro se letter to be clear and concise in its intent and no further inquiry was necessary to determine what Kleypas was requesting." The district court did not credit Kleypas' affidavit, which explicitly stated that he did not intend for his letter "to be used to dismiss the Motion under K.S.A. 60-1507" and that he "did not want the Court to dismiss the Motion." The district court viewed the matter as Kleypas merely changing his mind about the dismissal, and stated, "[A] litigant changing his mind is not grounds for relief from judgment[.]"

Given the fact that dismissing Kleypas' K.S.A. 60-1507 motion with prejudice could have life-or-death consequences for him, maybe it is something he should have been allowed to change his mind about. The substantive content of Kleypas' letter is brief. It does not reference any statutes, and the body of the document requesting relief is

10

one sentence long. Kleypas' entire request was:  "The matter before you . . . was filed without my consent and/or approval and is a matter that should not proceed." On appeal, Kleypas argues that this key phrase is ambiguous and notes that the letter does not even contain the word "dismiss." Kleypas contends that the phrase "a matter that should not proceed," could be interpreted as meaning that he merely wanted to "pause" or "interrupt" the proceedings. The State defends the district court's reading of Kleypas letter, asserting that the document is simply "not amenable to any other reasonable interpretation[.]"

To support his argument, Kleypas points to the difference between the definitions of "proceed" and "dismiss." Proceed is defined as "to advance or go on, esp. after stopping." Webster's New World College Dictionary 1160 (5th ed. 2016). Dismiss is defined as "[t]o send (something) away; specif., to terminate (an action or claim) without further hearing, esp. before the trial of the issues involved." Black's Law Dictionary 589 (11th ed. 2019). While there may be some distinction between the definitions of the two terms, that difference does not render the letter ambiguous. The simplest interpretation of the phrase "a matter that should not proceed" is, as the district court found, that Kleypas wanted to stop any more proceedings on the K.S.A. 60-1507 motion.

The parties contest whether evidence of other circumstances outside the letter should have been relied on in determining its meaning. Kleypas asserts the district court should have seen his affidavit as directly contradicting its interpretation of the letter. But, as noted above, the district court found that Kleypas' affidavit was merely evidence that he had changed his mind. Although the district court found that Kleypas' letter was "clear and concise in its intent[,]" the court still considered several external factors in making its ruling, including:  (1) that Kleypas addressed the letter to the correct district judge; (2) that Kleypas had "prior extended experience with the legal system"; (3) that Kleypas had "sufficient time to carefully consider his decision"; and (4) that he wanted to proceed on his own because he did not send a copy of the letter to the SBIDS attorneys.

Kleypas asserts the district court's considerations were misguided and argues, as he did in his motion to alter or amend, that his history of mental illness should have factored into the court's interpretation of the intent of the letter. Kleypas' affidavit stated that he has been diagnosed with mental illness and is under the care and treatment of a physician who prescribes medication to treat his illness. He offered many exhibits including affidavits and testimony of physicians describing his long history of mental disease. Kleypas contends that other "contextual clues"—including his request for "guidance/assistance" from the district court in the letter—suggest that he only wanted to pause or interrupt the habeas proceedings.

A more important contextual clue potentially rendering the intent of the letter ambiguous is located within the final sentence of the letter itself. Before stating that the motion "is a matter that should not proceed[,]" Kleypas asserts that the motion was "filed *without my consent and/or approval*[.]" (Emphasis added.) This portion of the sentence questions the attorney-client relationship and the scope of representation Kleypas was receiving. It would have been more prudent for the district court to interpret the letter as Kleypas alerting the court of a potential conflict with his attorneys, and then setting the matter for a hearing to investigate whether the conflict could be resolved.

In the end, we need not decide whether the district court erred by interpreting Kleypas' letter as an unambiguous request to dismiss his K.S.A. 60-1507 motion. As explained above, Kleypas was represented by the SBIDS attorneys. Thus, even if Kleypas' letter was an unambiguous request to dismiss his case, we find that the district court erred by dismissing the K.S.A. 60-1507 motion without notifying Kleypas' counsel of record and without setting the matter for a hearing to determine whether Kleypas was competent to dismiss his motion and whether he was knowingly and voluntarily waiving his right to postconviction relief. We will develop these findings and this analysis more thoroughly in the following sections of this opinion.

12

DID THE DISTRICT COURT ERR BY NOT NOTIFYING KLEYPAS' COUNSEL OF RECORD BEFORE DISMISSING HIS K.S.A. 60-1507 MOTION?

Kleypas argues that the district court erred when it failed to notify his counsel of its intent to dismiss the K.S.A. 60-1507 motion before entering the order of dismissal. Kleypas' claim stems from several different legal theories—a violation of his procedural due process rights to notice and an opportunity to be heard, an improper ex parte communication, and improper hybrid representation. Most of the confusion on this issue flows back to whether Kleypas was being represented by the SBIDS counsel who drafted his motion and were noted as counsel of record in the district court's files. The State refuses to acknowledge that Kleypas was represented; it insists that Kleypas was acting pro se and characterizes the SBIDS attorneys' argument on appeal as asserting that their own due process rights were violated. The State also argues that Kleypas' letter was not an ex parte communication and there was no hybrid representation.

Kleypas couches his arguments in this issue mostly in terms of procedural due process. "Whether due process has been afforded is a question of law subject to unlimited review." *Sherwood v. State*, 310 Kan. 93, 96, 444 P.3d 966 (2019). "The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State v. Moody*, 282 Kan. 181, 188, 144 P.3d 612 (2006).

To begin, the error Kleypas complains of—the district court's decision to give effect to his letter without notifying or providing an opportunity for the attorneys representing him to respond—is perhaps not properly categorized as a violation of his due process rights to notice and opportunity to be heard. After all, Kleypas sent the letter to the court himself, so he had notice of his own action and a chance to be heard. We agree with the State that the SBIDS attorneys' argument on appeal is one asserting that their own due process rights were violated—not Kleypas' due process rights.

13

We also agree with the State that Kleypas' letter did not constitute an ex parte communication with the court. Kansas Code of Judicial Conduct, Canon 2, Rule 2.9 prohibits a judge from engaging in ex parte communications unless they are for scheduling, administrative, or emergency purposes and do not address substantive matters. Kansas Code of Judicial Conduct, Canon 2, Rule 2.9(A)(1) (2021 Kan. S. Ct. R. 491). An "ex parte communication" is defined as "[a] communication between counsel or a party and the court when opposing counsel or party is not present." Black's Law Dictionary 348 (11th ed. 2019). Kleypas' letter qualifies as a communication between a party and the court. But the letter was also delivered to the State, the opposing party in this proceeding, so it did not constitute an ex parte communication.

Kleypas also argues that the district court improperly allowed him to engage in hybrid representation by dismissing his K.S.A. 60-1507 motion in response to his pro se letter, when he was being represented by legal counsel when the case was dismissed. He asserts that even if his letter could be interpreted as a request for voluntary dismissal, the district court should have rejected the pro se request to dismiss the K.S.A. 60-1507 motion when he was represented by counsel who had filed the motion on his behalf.

In Kansas, a party has the right to represent themselves or to be represented by counsel, but they have no right to hybrid representation. *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004). Further, a litigant who is represented by counsel has no right to dictate the procedural course of their representation by counsel. *State v. McKessor*, 246 Kan. 1, 12, 785 P.2d 1332 (1990). Because Kansas does not provide a right to hybrid representation, "substantive documents submitted pro se by a person represented by counsel, with the exception of motions to relieve counsel, need not be considered by the court or filed by the clerk." *Wahl v. State*, No. 114,888, 2017 WL 3668917, at *5 (Kan. App. 2017) (unpublished opinion). Our Supreme Court has clarified that it is within the district court's discretion to allow defendant self-representation after counsel is appointed. *State v. Pollard*, 306 Kan. 823, 843, 397 P.3d 1167 (2017).

14

As we stated before in this opinion, Kleypas was represented by counsel. The K.S.A. 60-1507 motion filed with the court was prepared by counsel and signed only by counsel, not Kleypas. When the motion was filed, the SBIDS attorneys filed an entry of appearance and a separate motion for the court to find Kleypas indigent and to officially appoint them as counsel. The clerk's office accepted the K.S.A. 60-1507 motion and recorded the appearance of the SBIDS attorneys as Kleypas counsel. The SBIDS attorneys requested a status conference, a request that was pending when the district court dismissed the case. As Kleypas points out, at all points during these proceedings—except for the sending of his letter—he was represented by the SBIDS attorneys, even though they had not been officially appointed by the court. The district court even acknowledged that the SBIDS attorneys were Kleypas' counsel of record by sending them a copy of the dismissal with prejudice order on April 11, 2018, although the court apparently saw no need to notify the same counsel about Kleypas' pro se letter.

The district court did not interpret Kleypas' letter as an indication that he had a conflict with or wanted to relieve his counsel. Instead, it treated the letter as a substantive motion seeking to dismiss his K.S.A. 60-1507 motion, without notifying his attorneys of record. In doing so, the district court allowed Kleypas to engage in hybrid representation. But because Kleypas was being represented by the SBIDS attorneys, he had no right to dictate the procedural course of the proceedings. *McKessor*, 246 Kan. at 12. And even if Kleypas' letter was not a request for dismissal but represented a request to relieve his counsel and proceed pro se, the district court should have first notified his attorneys of record and held a hearing on the matter. See *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014) (discussing district court's duty to inquire into a potential conflict of interest).

Although the district court had discretion to allow Kleypas to file pro se documents when he was represented by counsel, we find the district court abused that discretion by dismissing the K.S.A. 60-1507 motion with prejudice based on Kleypas' letter without giving prior notice to the SBIDS attorneys. Even if this case were a routine

15

postconviction proceeding with counsel of record involved, the district court should not have addressed a pro se request for dismissal without first notifying counsel that the request for dismissal had been filed. Although we could end our analysis here, Kleypas also argues that because he is a prisoner under sentence of death, he has a statutory right to counsel in district court that other inmates do not have in K.S.A. 60-1507 proceedings. And he argues there are other procedural safeguards in place before an inmate subject to the death penalty can waive postconviction relief. We will turn to these additional claims.

### DID THE DISTRICT COURT ERR BY FAILING TO FOLLOW THE PROCEDURE IN K.S.A. 22-4506(d) BEFORE DISMISSING KLEYPAS' MOTION?

Kleypas asserts that the district court erred by failing to follow the procedure in K.S.A. 22-4506(d), which provides a statutory right to counsel and certain procedural safeguards when a death-sentenced individual begins habeas proceedings under K.S.A. 60-1507. The State argues that the provisions of K.S.A. 22-4506(d) are inapplicable because Kleypas did not file the K.S.A. 60-1507 motion himself and thus never triggered his right to counsel or the procedures outlined in the statute. This issue requires statutory interpretation of K.S.A. 22-4506(d), a question of law subject to unlimited review. See *Stewart v. State*, 310 Kan. 39, 43, 444 P.3d 955 (2019).

In a typical proceeding under K.S.A. 60-1507, a movant has no right to receive appointed counsel in district court unless they are found to be indigent and "the court finds that the petition or motion presents substantial questions of law or triable issues of fact." K.S.A. 22-4506(b). But under K.S.A. 22-4506(d), an indigent person convicted of capital murder has an absolute right to counsel in district court. K.S.A. 22-4506(d)(1) provides that SBIDS must provide for the assignment of attorneys who are qualified to represent death-sentenced individuals "*upon a filing of* a petition for writ of habeas corpus or a motion attacking sentence under K.S.A. 60-1507, and amendments thereto[.]"

16

(Emphasis added.) In other words, the subsection provides a statutory right to appointed counsel for death-sentenced individuals after a K.S.A. 60-1507 motion is filed.

SBIDS assigned attorneys to help Kleypas draft his motion before his right to counsel under the statute attached—before the filing of his motion. This assignment appears to have been preemptive, especially considering K.S.A. 22-4506(d)(2) provides more steps a district court must take before appointing an attorney or accepting the defendant's rejection of such representation. The attorneys assigned by SBIDS consulted with Kleypas and drafted and then filed the K.S.A. 60-1507 motion on his behalf before being appointed by the district court. In fact, they moved for the district court to make such an appointment alongside the K.S.A. 60-1507 filing.

K.S.A. 22-4506(d)(2) lays out other procedural steps a district court must follow upon the filing of a K.S.A. 60-1507 motion by an individual sentenced to death:

> "If a petitioner or movant, who has been convicted of capital murder and is under a sentence of death, files a petition for writ of habeas corpus or a motion attacking sentence under K.S.A. 60-1507, and amendments thereto, the district court shall make a determination on the record whether the petitioner or movant is indigent. Upon a finding that the petitioner or movant is indigent and accepts the offer of representation or is unable competently to decide whether to accept or reject the offer, the court shall appoint one or more counsel, in accordance with subsection (d)(1), to represent the petitioner or movant. If the petitioner or movant rejects the offer of representation, the court shall find on the record, after a hearing if necessary, whether the petitioner or movant rejected the offer of representation with the understanding of its legal consequences. The court shall deny the appointment of counsel upon a finding that the petitioner or movant is competent and not indigent." K.S.A. 22-4506(d)(2).

The disagreement between the parties lies in whether the statute makes a distinction based on who files the K.S.A. 60-1507 motion. The State argues that the statutory right to counsel and procedural protections of K.S.A. 22-4506(d)(2) are not

17

triggered by the filing of a motion unless that motion is filed by the individual under a death sentence. The State's brief points out that "Kleypas himself did not file a K.S.A. 60-1507 motion" and that the SBIDS attorneys filed it "'on his behalf.'" But this is a distinction without a difference as a K.S.A. 60-1507 motion was unquestionably filed, no matter if Kleypas did so himself or attorneys did so on his behalf. There is nothing in the plain language of the statute that states that a death-sentenced prisoner must *personally* file a K.S.A. 60-1507 motion to be afforded the right to counsel provided by the statute.

Thus, Kleypas' statutory right to counsel under K.S.A. 22-4506(d) was triggered upon the filing of his K.S.A. 60-1507 motion. The provisions of K.S.A. 22-4506(d)(2) required the district court to (1) determine on the record whether Kleypas was indigent, (2) determine whether Kleypas desired to accept representation from attorneys assigned by SBIDS, if he was competent to make that decision, and (3) if he rejected such representation, make a finding on the record, after a hearing, if necessary, that he understood the legal consequences of doing so. The district court erred by making none of these inquiries, following none of these procedural safeguards, and instead ordering a dismissal with prejudice based on Kleypas' pro se letter. The district court's order dismissing Kleypas' K.S.A. 60-1507 motion with prejudice based on his pro se letter violated Kleypas' statutory right to counsel under K.S.A. 22-4506(d).

DID THE DISTRICT COURT ERR BY FAILING TO CONDUCT A HEARING BEFORE ALLOWING KLEYPAS TO WAIVE POSTCONVICTION RELIEF?

Kleypas also argues that the district court erred by granting a dismissal with prejudice—effectively a waiver of his right to pursue any postconviction relief—without first conducting a hearing to ensure that he was competent to do so and that his waiver was knowing and voluntary. He asserts that due process requires that sufficient procedures be undertaken before a death-sentenced prisoner can waive postconviction relief, procedures that are not required in noncapital cases. The State dismisses Kleypas'

18

claim and asserts that nothing in K.S.A. 60-1507 requires a formal waiver of the statute's provisions. The State succinctly argues that "a person serving a sentence for a criminal conviction can forego K.S.A. 60-1507 proceedings by simply doing nothing."

Kleypas again couches his arguments on this issue mostly in terms of procedural due process. As stated before, whether due process has been afforded is a question of law subject to unlimited review. *Sherwood*, 310 Kan. at 96. The State asserts that whether K.S.A. 60-1507 requires a person in custody under a sentence of death to formally waive the provisions of the statute involves statutory interpretation and is a question of law subject to unlimited review. *State v. Mitchell*, 297 Kan. 118, 121, 298 P.3d 349 (2013).

When a state has chosen to provide postconviction remedies—as Kansas has done by statute under K.S.A. 60-1507—due process principles apply to the terms on which those remedies may be furnished or lost. See *St. Pierre v. Cowan*, 217 F.3d 939, 949 (7th Cir. 2000) (citing *Gilmore v. Utah*, 429 U.S. 1012, 97 S. Ct. 436, 50 L. Ed. 2d 632 [1976]). Although no Kansas court has ruled on the issue, federal courts have held that before a district court permits a death-sentenced individual to withdraw a habeas petition and forgo any further legal proceedings, sufficient procedures must be used to ensure that (1) the prisoner is competent to waive postconviction relief, and (2) the waiver is knowing and voluntary with an understanding of the consequences. See *Kirkpatrick v. Chappell*, 950 F.3d 1118, 1133 (9th Cir.) (citing *Rees v. Peyton*, 384 U.S. 312, 313-14, 86 S. Ct. 1505, 16 L. Ed. 2d 583 [1966]), *cert. denied* 141 S. Ct. 561 (2020); *Fahy v. Horn*, 516 F.3d 169, 176-88 (3d Cir. 2008); *Mata v. Johnson*, 210 F.3d 324, 329-30 (5th Cir. 2000); *St. Pierre*, 217 F.3d at 947-50.

*Competence*

In *Rees*, a death-sentenced petitioner instructed his counsel to withdraw his petition for certiorari and forgo any other attacks on his conviction and death sentence.

19

On review, the United States Supreme Court remanded the case to the district court to determine his competence before permitting the withdrawal. The *Rees* court explained that the district court had to ensure the defendant had "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity[.]" 384 U.S. at 314.

Applying *Rees*, other federal courts have developed a three-part test for determining whether a death-sentenced prisoner is competent to waive their postconviction rights: (1) whether that person suffers from a mental disease, disorder, or defect; (2) whether a mental disease, disorder, or defect prevents that person from understanding their legal position and the options available to them; and (3) whether a mental disease, disorder, or defect prevents that person from making a rational choice among their options. *Mata*, 210 F.3d at 328 (citing *Rumbaugh v. Procunier*, 753 F.2d 395 [5th Cir. 1985]). Here, despite potential questions about Kleypas' competence brought before the district court, no inquiry was made into his capacity to appreciate his options and make a rational choice on whether to forgo judicial proceedings.

*Knowing and voluntary waiver*

Even if the district court had ensured that Kleypas was competent and had the ability to understand the proceedings, it should have also confirmed that the waiver was voluntary, knowing, and intelligent. Typically, whether a waiver is voluntary, knowing, and intelligent involves two distinct inquiries—neither of which occurred in this case. See, e.g., *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." 475 U.S. at 421. And second, "the waiver must have been made with a full

20

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." 475 U.S. at 421.

When a decision to dismiss a K.S.A. 60-1507 motion carries life-or-death consequences, due process demands a robust procedure to ensure that the movant fully understands those consequences. *St. Pierre*, 217 F.3d at 947-50. By abandoning his K.S.A. 60-1507 motion, Kleypas effectively waived future avenues for habeas proceedings in federal court. See 28 U.S.C. § 2254(b)(1) (requiring the exhaustion of remedies available in state court as a prerequisite to consideration of federal writ of habeas corpus). There is no indication in the record that Kleypas understood that by dismissing his K.S.A. 60-1507 motion, he might be forfeiting any future chance to challenge his conviction or death sentence. Because the district court did not make any inquiry into the matter, there is no way to know whether Kleypas appreciated the consequences of his decision, understood the possible grounds for relief but did not wish to pursue them, or had a reason for not delaying his execution any longer.

Federal courts require that before an inmate sentenced to death can waive postconviction relief, the court must conduct a hearing to determine (1) whether the inmate is competent to waive postconviction relief and (2) whether the inmate's waiver of postconviction relief is being made knowingly and voluntarily with an understanding of the consequences. There is no reason why Kansas should adopt a lesser standard. Thus, the district court erred by allowing Kleypas to voluntarily dismiss his K.S.A. 60-1507 motion without first conducting a hearing to ensure that he was competent to do so and that his waiver of postconviction relief was knowing and voluntary.

DID THE DISTRICT COURT ERR BY GRANTING THE DISMISSAL WITH PREJUDICE?

Finally, Kleypas argues that even if the district court did not err by dismissing his K.S.A. 60-1507 motion without first notifying his counsel of record and scheduling the

21

matter for a hearing, the court erred by ordering the dismissal with prejudice. Kleypas contends that the rules of civil procedure apply to a K.S.A. 60-1507 proceeding, and K.S.A. 2021 Supp. 60-241(a)(1) permits a party to voluntarily dismiss an action *without* prejudice. The State asserts that a dismissal with prejudice was appropriate because (1) Kleypas' letter expressed a desire for his motion to be dismissed with prejudice; (2) the statute of limitations had passed when the district court entered the dismissal order; and (3) any future K.S.A. 60-1507 motion filed by Kleypas would be barred as successive.

The State asserts this court should review this issue under an abuse of discretion standard and cites an unpublished case from this court where a dismissal with prejudice was ordered as a sanction under K.S.A. 60-216(f). Because sanctions did not affect the district court's dismissal of Kleypas' motion with prejudice, the abuse of discretion standard does not apply. Rather, whether the dismissal should have been ordered with or without prejudice depends on the application of K.S.A. 2021 Supp. 60-241(a)(1), which is a question of law subject to unlimited review. *Stewart*, 310 Kan. at 43.

A proceeding under K.S.A. 60-1507 is civil and is governed by the rules of civil procedure when they apply. Supreme Court Rule 183(a)(2) (2022 Kan. S. Ct. R. 242); see *Dawson v. State*, 310 Kan. 26, 33, 444 P.3d 974 (2019) (noting that the rules of civil procedure govern motions under K.S.A. 60-1507 "'to the extent the rules are applicable'" but that "'those rules will not always control'"). This court has explicitly found that K.S.A. 60-1507 motions "may be voluntarily dismissed under K.S.A. 60-241(a)(1)." *Smith v. State*, 22 Kan. App. 2d 922, Syl. ¶ 1, 924 P.2d 662 (1996).

K.S.A. 2021 Supp. 60-241(a)(1)(A)(i) provides a vehicle for a plaintiff to voluntarily dismiss a civil action without a court order by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment[.]" But if an answer has been filed by an adverse party, "a party may only dismiss the action by filing a motion to dismiss and seeking an order of the court." *Smith*, 22 Kan. App. 2d

22

at 924. K.S.A. 2021 Supp. 60-241(a)(1)(B) states a voluntary dismissal is "without prejudice" provided the plaintiff has not previously dismissed an action based on the same claim.

To the extent that Kleypas' letter could be construed as a request to dismiss his K.S.A. 60-1507 motion, it should be categorized as a notice of voluntary dismissal under K.S.A. 2021 Supp. 60-241(a)(1). There is no question that the State had filed no response to the K.S.A. 60-1507 motion when Kleypas sent his letter to the court; the State concedes that it "took no action whatsoever in this process." Nor is there any debate that Kleypas had never dismissed a K.S.A. 60-1507 motion. Thus, even if the district court did not err by dismissing Kleypas' K.S.A. 60-1507 motion without first notifying his counsel of record and scheduling the matter for a hearing, the dismissal order should have been without prejudice under K.S.A. 2021 Supp. 60-241(a)(1)(B).

The State's arguments in support of a dismissal with prejudice are unavailing. First, there is nothing in Kleypas' letter to suggest that he intended for his motion to be dismissed with prejudice. Second, the State's time limitation argument is also meritless. The State contends that when the district court entered its order of dismissal with prejudice, the time limitation for Kleypas to file a K.S.A. 60-1507 motion had expired, barring him from refiling his motion. But under K.S.A. 2021 Supp. 60-241(a)(1), Kleypas' voluntary dismissal should have been given effect on the day the letter was filed—March 26, 2018—and on that date the statute of limitations for Kleypas' motion had not expired. Third, any future K.S.A. 60-1507 motion filed by Kleypas would not have been barred as successive under Supreme Court Rule 183(d) (2022 Kan. S. Ct. R. at 243). The district court stated its ruling was not a summary denial and that it had not considered the merits of Kleypas' motion. And K.S.A. 2021 Supp. 60-1507(c) merely provides that the district court "shall not be required" to entertain a successive motion for similar relief on behalf of the same prisoner, but it still has discretion to do so.

CONCLUSION AND REMAND ORDER

Even if Kleypas' letter was an unambiguous request to dismiss his K.S.A. 60-1507 motion, the district court abused its discretion by permitting Kleypas to engage in hybrid representation when he was represented by legal counsel, and the district court should not have dismissed the K.S.A. 60-1507 motion without giving prior notice to the SBIDS attorneys. The district court also erred by failing to follow the procedure in K.S.A. 22-4506(d) before dismissing Kleypas' motion. Furthermore, because Kleypas is a prisoner sentenced to death, the district court should not have dismissed his K.S.A. 60-1507 motion without first conducting a hearing to determine whether Kleypas was competent to dismiss his motion and whether he was knowingly and voluntarily waiving his right to postconviction relief. Finally, even if the district court had legal grounds to dismiss the K.S.A. 60-1507 motion, it erred by dismissing the motion with prejudice. We reverse the district court's order of dismissal with prejudice, direct that Kleypas' K.S.A. 60-1507 motion be reinstated, and remand for further proceedings.

Reversed and remanded with directions.